Moncure P.
delivered the opinion of the court.
This is a foreign attachment suit in equity brought in the Circuit court of Frederick county, by Fisher & Brother of Philadelphia, against Clement March of New Hampshire, for the purpose of subjecting an interest which the said March has in a tract of land in the said county of Frederick, to the payment of a judgment obtained by the said Fisher & Brother against the said March in a foreign attachment suit in the District court for the city and county of Philadelphia, for the sum of $3,558.61, with costs, amounting in the whole to $3,589.11, with interest on the first named sum from the 15th day of May 1866. The said March filed no answer to the bill filed in the suit in Frederick Circuit court, but made his defence entirely by pleas, which he filed at different times during the pendency of the suit, to the number of nine in all. By the final decree, made in the suit on the 8th day of July 1872, six of these nine pleas were not sustained; the demurrers to five of them, to wit: Nos. 1, 5, 6, 7 and 8 having been sustained, and the other of the six, to wit; No. 4, not having been proved; but three of them, to wit, Nos. 2, 3 and 9, were held to be good in law, and sustained by the proofs; and therefore the bill was dismissed with costs, and the attachment sued out in the cause was dissolved.
The errors assigned by the appellants, in the decrees complained of by them, are founded on the action of the Circuit court upon the said three pleas, Nos. 2, 3 and 9, which we will now consider in their order.
*771 “And the defendant by way of amendment, by leave of the court, to the pleas formerly filed in this cause, says that the execution upon the judgment on which this suit is based, which appears by the record to have been issued, and under which certain property •of said defendant was taken, was never returned to the office from which it was issued, and that until said execution shall have been returned to said office, the plaintiffs have no right to sue upon said judgment; ■and further, that as, under the execution which was upon the judgment now sued on, it appears by the record that 9,275 shares of Pennsylvania Mining Company stock, belonging to the defendant, was sold by the sheriff, and the same delivered by him to the plaintiffs, the said seizure of said stock, and its delivery to the plaintiffs, must be taken as payment in full of said judgment and execution; and that therefore the plaintiffs have no right to sue; and further, that it appears by the record, that by virtue of the execution issued on the judgment now sued on, from the office in which the same was obtained, 9,275 shares of Pennsylvania Mining Company stock, belonging to defendant, was delivered to plaintiffs; and the acceptance of the said stock must be taken as satisfaction in full of said judgment and execution.”
It appears by the record, that only two executions were issued upon the judgment aforesaid, one of them against the defendant in the attachment, Clement March, and the other against the garnishees, Charles Chamblos & Co.; and both of them were returned by the sheriff, with a stay of proceedings endorsed thereon by the plaintiffs’ attorney. It does not appear from any return or endorsement on either of *772 them, that either of them was levied on anything. But it otherwise appears from the record that they were in fact levied upon the shares of stock aforesaid, which were sold by the sheriff and purchased by the plaintiff at 8 cents per share, making the whole purmoney $742, which operated as a credit to that extent, on account and in part of the executions; leaving the entire balance of the debt, interest and costs, for which the said executions were issued, still remaining unpaid. There can be no doubt but that for the recovery of the said balance the plaintiffs had a right to sue out other executions upon the said judgment, or to bring another action or suit thereon, notwithstanding the said levy and other proceedings had under the executions aforesaid.
It follows, as a necessary consequence from what has been said, that we are of opinion the Circuit court erred in holding the said plea No. 2, to be good in law and sustained by the proofs.
Plea No. 3 is in these words:
“And for further plea the defendant says, that it does not appear from the record in this cause, that any process for appearance was ever served upon defendant, in person or by order of pdblication; and although an appearance by attorney is entered of record, such appearance was unauthorized by the defendant.”
It is true that it does not appear from the record in the said cause, that any process for appearance was ever served upon the defendant, in person or by order of publication. But is it true that the appearance by attorney which was entered of record, was unauthorized by the defendant?
“We think not. The record shows that a declaration in assumpsit, embracing several counts, both special and the common, was filed in the case; there was a *773 rule to plead; in answer to which, the defendant appeared by J. C. Bullett his attorney, and filed a plea of non-assumpsit; the issue upon which was tried by a special jury, which rendered a verdict for the plaintiffs’ claim; on which verdict a judgment was accordingly entered. The record thus shows that the defendant did appear by attorney in the case: and if the record be not conclusive upon that question in this case, it certainly affords very strong prima facie evidence of the fact, and ought to prevail, in the absence of stronger evidence to the contrary de hors the record. So far from there being such stronger evidence to the contrary, we think the evidence de hors the record tends strongly to support, rather than to contradict, the record in this respect. Mr. Bullett, in his deposition taken in the case, says: “I am a member of the bar, and have been for twenty years. I represented Clement March in a judgment obtained by Fisher & Brother against him. I cannot state from my present recollection, at what time I received authority from Mr. March to appear in that case. I had been the counsel of Mr. March prior to that time, and I may have appeared in the case without previous authority; though I suppose I had authority from him. I have no recollection on the subject. (His testimony was given more than six years after the transaction occurred.) It is not very likely that I would have appeared for him without authority.” Witness wrote to Mr. March on the day on which the judgment was obtained, and said in the letter: “Judgment was obtained this morning against you for $3,558.61; the debt being proved by your clerk Mr. Hunter. I understand there is more than sufficient in the hands of the garnishees to pay the judgment. I think that you had better send an order to have any amount that is in their hands paid *774 over to me, after the judgment is satisfied.” Witness further says: “ I have no recollection whether I ever received any letter from Mr. March in regard to it or not. Mr. March never made any objection to my appearing for him, to my recollection. I have never seen him since.”
Mr. Bullett’s deposition was afterwards taken again;, on which occasion a paper in the case of Fisher vs. March and Chambloss, &c. garnishees, taken from the records of the District court aforesaid, and which had been mislaid at the previous taking of his deposition, was shown to the witness, when he testified as follows: “The paper shown me is a copy of an order, signed by Mr. March upon Charles Chamblos, with a receipt of Fisher & Brother attached, and was filed by me, according to my best recollection now, under instructions which I received at the time, I suppose, from Mr. Chamblos. I was at the time representing Mr. March as his attorney in this case. I recollect that I was frequently importuned by the Messrs. Fisher or their counsel, I think by both, to direct Mr. Chamblos to hand over the stock referred to. This I refused to do without Mr. March’s authority. Finally the authority was produced, in the shape of the order dated November 13, 1866, a copy of which is set out in the paper now shown me; and I then drew the receipt, or had it drawn by a clerk in my office, which is set out in the paper before me, and endorsed upon that paper the words, ‘Filed by consent of counsel for plaintiff, defendant and garnishees,’ and signed it as counsel for the defendant and garnishees. I had no doubt at that time, as to my authority to act as attorney for Mr. March in signing that endorsement and making that arrangement. The original order, obtained, as I believe, by Mr. Fisher from Mr. March, was submitted to me be *775 fore I drew the receipt or filed the papers. I certainly had no doubt of my right to act as Mr. March’s counsel, or I would not have acted.”
This is certainly very strong testimony to show that Mr. Bullett’s appearance as counsel in the case was authorized by Mr. March, blow what testimony is there in the case tending in any way to show the contrary? Only the -testimony of Mr. March himself, who certainly does not say that Mr. Bullett was not his counsel in the case. The most that he says is, that he had no recollection of having ever authorized Mr. Bullett to appear and defend any suit brought against him by Fisher and Brother in the year 1865 or 1866, in Philadelphia; and that he had no recollection of having ever received any letter from Mr. Bullett, advising him that any such suit had been brought against him. But he had just said, in qualification of his answer in regard to another part of the same transaction, “lam speaking from recollection of six years’ standing, and do not know that I am strictly accurate.” And in answer to a question, “ Who was your counsel in Philadelphia before you left there?” he said, “John O. Bullett.” This testimony of the defendant himself is wholly insufficient to disprove a fact which is so strongly sustained by the evidence on the other side.
We therefore think that the Circuit court erred in holding that plea Uo. 3 is good in law and sustained by the proofs.
Plea Uo. 9 is in these words:
“That the judgment now sued on was obtained under foreign attachment proceedings, by virtue of the location within the jurisdiction of the court rendering the said judgment of certain effects of said defendant, to protect which said effects, John C. Bui-
*776 lett, an attorney practicing in said court, appeared; and that the said judgment was obtained by virtue of and against those effects only; and that therefore no ac^on thereupon can be entered in this court against said defendant.”
The ground of the defence involved in this plea is, that the proceeding in Philadelphia was purely an attachment proceeding, having for its object the subjection of certain specific effects of the defendant to the payment of the plaintiffs’ claim; that the appearance of the defendant’s attorney had reference only to the protection of the said effects, and not to the prevention of a judgment against the defendant personally, for the recovery of a debt, except as a means of protecting the said effects; that a person, whose effects are attached in a state in which he does not reside, has a right to appear for the purpose of defending his effects, without subjecting himself to a personal judgment which may be enforced against him in another state; and that therefore the judgment recovered against the defendant personally, in the attachment proceeding in Philadelphia in this case, cannot be enforced against him in this state under the constitution of the United States, article 4, section 1, and the act of May 26th, 1790, passed in pursuance thereof.
We think that no sufficient authority can be found to sustain this ground of defence, and that it is in conflict with the principle of all or nearly all of the cases on the subject. There may possibly be in some of the states attachment proceedings of a peculiar kind, having reference only to the property and not to the person of a debtor. These proceedings, if there be any such, are altogether in rem, and there is in them no personal judgment against the defendant. And though he may appear to defend his property against a judgment, such *777 appearance will not make the judgment which may be rendered against him in such proceeding a judgment, which may be enforced against him personally, even in the state in which it is rendered, much less in any other state.
But such is not the general nature of attachment proceedings. On the contrary, their general and almost universal nature is two-fold—first, to obtain a judgment by a creditor against a debtor for the amount of the debt claimed; and, secondly, to subject by attachment certain property or credits of the debtor to the payment of such debt. The first enquiry in such cases always is, whether there be in fact any such debt, and what is its amount; and that enquiry is governed by the same principles as if the suit were an ordinary one by a creditor against a debtor. If the debtor will not appear and defend himself, in person or by attorney, the creditor will go on to establish his claim in the mode prescribed by law; and if he does so, will obtain a judgment, which will have such effect in the state in which it is rendered as may be given to it by the law of that state; but it will have no effect in another state as a personal judgment against the debtor. The debtor however may appear and defend himself in person or by attorney; and if he does, then the case is tried, as if the creditor and debtor were the only parties to the suit, and as if the recovery of a personal judgment for the debt were the only object of the suit; and the judgment which may be recovered in such a proceeding will have the same force and effect everywhere as a judgment recovered in an ordinary suit between creditor and debtor. The record may show upon its face whether the debtor did or did not appear, and if it does, then the judgment will have effect accordingly. But it may not show upon its face *778 whether the debtor did or did not appear. In that ease the presumption would be in favor of the validity of the judgment. But the defendant would have a right in such case, by his pleading and evidence, to-aver and prove the contrary; and he would have such right, even though the record should state upon its face that the defendant did appear. Of course we are-now speaking of the effect of the judgment elsewhere than in the state in which it is rendered. Its effect, there depends upon the law of that state.
In support of the foregoing positions we need only refer to 6 Rob. Pr. 434-439; 2 Smith’s Leading Ca. 827, 841, 6th Am. edi.; 2 Am. Lead. Ca., Mills v. Duryee; and the cases cited in those works. See also Aldrich v. Kinney, 4 Conn. R. 380; Thompson v. Whitman, 18 Wall. U. S. R. 457; Knowles v. The Gaslight and Coke Co., 19 Id. 58; and Hill v. Mendenhall, 21 Id. 453; and the authorities referred to in those cases.
In the case under consideration, there can be no doubt but that the attachment proceeding of Pisher & Brother versus Clement March, in the District court for the city and county of Philadelphia, was of that general nature which made it proper to ascertain in the first place, whether the debt claimed by Pisher & Brother to be due them by March, was in fact due. The attachment was to appear and answer. There-was a declaration in assumpsit filed, containing all the usual counts. There was a rule upon the defendant-to plead. He accordingly appeared by attorney and plead non assumpsit. And there was a verdict and judgment for the plaintiff, all in the form usual in an ordinary action of assumpsit for the recovery of a debt. The proceeding was had in the city of Philadelphia, where the cause of action arose; where the defendant had long resided, and had transacted .business to an *779 immense amount—which place he left less than a month before the proceeding was commenced, with the declared intention of soon returning to his former residence and place of business. It does not appear that he had any estate or effects elsewhere. It was therefore manifestly his interest to appear and defend himself in the said proceeding, if he had any such defence to make, and the presumption is he could better make it in Philadelphia, where the transaction occurred, than anywhere else. That such is the nature and effect of proceedings under the foreign attachment law of Pennsylvania, see 1 Brightley’s Pendor’s Digest, page 716, title “Foreign Attachment,” page 721, § 28. It is there'expressly declared to be lawful for any defendant in an attachment, at any time before judgment obtained in the attachment, to cause an appearance to be entered for him, and to make defence to the action; in which case the action 'shall proceed as if commenced by a summons; but the attachment will continue to bind the estate and effects attached; and if judgment be rendered for the plaintiff, such judgment will have the like force and effect as in case of an action commenced by a summons.” See also Blyler v. Kline, 64 Penn. St. R. 130.
We are therefore of opinion, that the Circuit court erred in holding that Plea Bo. 9 is good in law and sustained by the proofs. And this disposes of all the errors assigned by the appellants.
But the appellee assigns errors in the rulings of the court, which it will be necessary to notice. They need however only to be noticed briefly.
In regard to the credit claimed for $742, the proceeds of the sale of the Pennsylvania Mining stock, the Circuit court made no decree upon that subject. *780 Of course the defendant is entitled to that credit, and will receive it.
In regard to the affidavit to the bill, if it be not now too late to object to it, we think it is substantially sufficient, if it be not in strict and'literal compliance with the law. We speak especially in reference to the second affidavit, which was made on the 7th day of April 1871. It is no valid ground of objection to that affidavit that it was made after the institution of the suit, nor that it was made by the agent of the plaintiffs instead of the plaintiffs themselves. The affidavit states that “the matters and things set forth in the bill are true,” and thus adopts it as part of the affidavit.
In regard to the pleas, the demurrers to which were sustained by the court, or such of them as to the action of the court upon which the appellee complains. The first of these is the fourth in the series of the pleas, to wit: the plea of no such record. Two grounds seem to be relied on in support of this plea—1st, that the amount of the judgment is differently stated in different parts of the record, whereas the bill in this case states but one of these amounts; and 2dly, that the date of the judgment is differently stated in different parts of the record; in one being stated as in May 1866, and the other as October 21st, 1870. In regard to the first of these grounds, the amount of the judgment is 18,558.61, the amount claimed in the bill; and there is no variance in the statement of the amount anywhere in the record of the judgment; but the special counts in the declaration, and the verdict and judgment, all correspond in that respect. There is an unaccountable variance from that amount in the writs of scire facias against the garnishees; but even that is corrected in the writ of fieri facias against the *781 garnishees, which is for the true amount of the judgment, as is also the fieri facias on the original judgment. The record sued on is the record of the original judgment, in which there is no variance. The apparent variance in the scire facias against the gainishees is immaterial in this case. In regard to the second of these grounds, to wit: the different dates of the judgment, the true date, according to the record, is May 15th, 1866, the date of the verdict. The only apparent variance from that in the record, if it can be said to be in the record, is in the index or minute of the proceedings, from which it would appear that the date of the judgment was October 21, 1870. But this variance is immaterial in this case, and we must regard the true date as that which is mentioned in the body of the record, to wit: May 15th, 1866.
The second of the pleas in regard to the action of the Circuit court on which the appellee complains is the seventh of the series; and, indeed, the eighth involves the same matter of defence, to wit: that the debt is founded on a stock-jobbing and gambling transaction, which is contrary to the law of Pennsylvania, and to public policy here as well as there, and fatal to the claim of the appellants, notwithstanding the judgment recovered by them in the attachment proceeding in Philadelphia. In regard to this ground of defence, the counsel for the appellants in their brief say, “that in the court below the point was made, that the contract upon which the judgment was obtained was a ‘ time ’ contract, and that it was prohibited by the laws of Pennsylvania. The point is not perhaps of importance in this court; but it may not be improper to note that the act of assembly prohibiting such contracts was repealed by the act of April 17th, 1862. (Supplement to Pendon’s Digest, p. 1,266.) Such contracts are now *782 constantly enforced by the courts in Pennsylvania. See Smith v. Bouvier, 20 P. F. Smith 325, 70 Pa. St. R. 325.” On the other hand, the counsel for the appellee in their brief insist that “ there is no repeal of those laws which applies to this case.” However that may be, we think it is a sufficient answer to this ground of defence, to say that there is no evidence in the record of the law of Pennsylvania on this subject; and, even if there was, and it was as contended for by the counsel for the appellee, the question would be concluded by the judgment rendered in the attachment case in Pennsylvania, to the judgment of the court,in which case it properly belonged, to decide the question, if it had, as it might have been raised therein.
In regard to the question raised by the sixth plea, as to the authority of Hunter to sign the checks, that question is, of course, concluded by the judgment obtained for the amount of these checks.
Having noticed, as far as seems to be necessary, the errors assigned in the decree of the Circuit court, whether on the ^ide of the appellants or appellee, we are of opinion, that the said court erred in bolding that pleas PTo. 2, 3 and 9 are good in law and sustained by the proofs; but did not err in not sustaining any of the other pleas; and that the said decree ought to be-reversed and annulled so far as it is in conflict with the foregoing opinion, and affirmed so far as it is consistent therewith, with costs to the appellants; and the cause remanded to the said Circuit court for further proceedings to be had therein to a final decree in conformity with the foregoing opinion.
The decree was as follows:
This case, which is pending in this court at its place of session in Staunton, having been heard but not de *783 termined there, this day came the parties here by their counsel, and the court having maturely considered the transcript of the record of the decrees aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the appellants, Fisher & Brother, are entitled in this suit to a decree against the appellee, Clement March, for the amount of their claim in the bill mentioned, to wit: $3,589.11, with interest on $3,558.61, from the 15th day of May 1866; being the amount of a judgment recovered by said Fisher & Brother against said March in a foreign attachment suit in the District court of the city and county of Philadelphia, of which suit a copy of the record is filed with said bill; subject however to a credit for $742, as of the 17th day of July 1866, being the amount made on that day by a sale of certain stock under execution issued on said .judgment; and are further entitled in this suit to a decree subjecting to the payment of said claim, or the balance due thereon after the application of said credit, any estate, debts or effects of the said March in the said county of Frederick; and that the said Circuit court erred in holding that pleas Bo. 2, 3 and 9 are good in law and sustained by the proofs; and in dissolving the attachment sued out in this cause against the land, &c., of the defendant March; in directing that the sum of one hundred and twenty-nine dollars and seventy-one cents (with its accrued interest), in the hands of the special receiver in the case, be by him paid to A. B. Pendleton, of counsel for said March; in dismissing the plaintiff’s bill; and in decreeing that the said defendant recover of the plaintiff his costs in that behalf expended.
Therefore it is decreed and ordered, that so much of the decrees appealed from as is in conflict with the *784 foregoing opinion be reversed and annulled, and the residue thereof affirmed; and that the said March pay to the said Fisher & Brother their costs by them expended in the prosecution of their appeal aforesaid here. And it is further decreed and ordered that this cause be remanded to the said Circuit court of Frederick county, to be proceeded in to a final decree in conformity with the foregoing opinion.
And it is ordered that this decree be entered on the order book here, and be forthwith certified to the clerk of the Supreme Court of Appeals at Staunton, where the case is pending, who shall enter the same on his order book, and forthwith certify it to the clerk of the said Circuit court of Frederck county.
Decree reversed.