**Richmond.**

SIMS v. TYRER.*

JANUARY 7, 1897.

Absent, Cardwell, J.

1. ATTACHMENTS—*Affidavits—Objections in Appellate Court for First Time.*—
Objection to an attachment because not supported by an affidavit, or
because the affidavit is defective, is ground for a motion to abate the
attachment, but the objection must be made in the court below, and
cannot be made for the first time in this court. If, however, the
bill upon which the attachment issues contains all necessary aver-
ments, is sworn to and filed before the attachment issued, and the
affidavit adopts the bill, this is all that is required.

2. JOINT PROPERTY—*Agreement by Owners to Sell—Sale by one of Owners
Contrary to the Agreement—Relief of other Joint Owner—Case in Judg-
ment.*—Where complainant and defendant who are joint owners of
property, the title to which stands in the name of the defendant,
agree for a given consideration to sell the joint property to a desig-
nated corporation which is to have an agreed capital and make
certain improvements on the property, and defendant, without the
knowledge or consent of the complainant, sells the joint property to
an entirely different corporation, on different terms and at a different
price, the complainant is not obliged to take an interest in the latter
corporation in lieu of the share he was to receive of the former, but
may recover of the defendant the same proportion of the considera-
tion received by him of the latter corporation as he was entitled to
receive under the original agreement to sell. In the case in judgment,
the parties agreed to sell an eight-tenths interest in the joint property
to other parties who were to pay $80,000 into the treasury of a corpora-
tion to be formed by them and the joint owners, and each of the joint
owners was to have a one-tenth interest in the stock and property of
the company. Subsequently the defendant, who was one of the
joint owners, without the knowledge or consent of the complainant

* Recently directed to be reported.

Opinion.

who was the other joint owner, sold a part of the joint property to another and different corporation, to be organized on different terms, for $25,000 of the stock of the company and $50,000 of its first mortgage bonds, and then disposed of both stock and bonds.

HELD : The complainant was entitled to recover of the defendant one-tenth of the value of said stock and bonds.

3. CHANCERY PRACTICE—*Findings of Commissioner—Evidence—Payment of Debt Secured by Deed of Trust.*—The finding of a commissioner in chancery, to whom a cause has been referred to take an account of liens, that a debt secured by a deed of trust had been paid and satisfied by the grantor, will not be set aside in the absence of evidence to the contrary. Where the commissioner has not returned with his report the evidence on which it is based, and no steps have been taken to have him do so, or to place the evidence before the court, it will be presumed that sufficient evidence was before the commissioner to justify his finding. The mere averment in the answer of a defendant that the debt was paid by the trustee in the deed out of the proceeds of a sale made by him, and a similar statement in the copy of the account of sales of the trustee filed with such answer, are not sufficient to overcome the finding of the commissioner, unless it appears that the record contains all the evidence before the commissioner.

Appeal from a decree of the Circuit Court of Alexandria county, pronounced July 2, 1894, in two chancery causes heard together, one under the style of *Tyrer* v. *O'Gorman and others*, and the other under the style *McCartney* v. *Potomac Electric Co. and others*.

*Affirmed.*

The opinion states the case.

*Critcher & Critcher*, for the appellant.

*James R. Caton*, for the appellee.

RIELY, J., delivered the opinion of the court.

It was assigned as error that the affidavit, which is required by statute as a prerequisite to the issue of the attachment, was not made.

If the affidavit is not made, or, if made, is defective, this is ground for a motion to abate the attachment. This the appellant did not do, but appeared and defended the case on the merits. Having failed to make the objection in the court below, he cannot make it for the first time in the appellate court. *Anderson* v. *Johnson,* 32 Gratt. 558; and *Fisher & Brother* v. *March,* 26 Gratt. 765.

But if a motion to quash the attachment for this cause had been made in the court below, it could not have prevailed. The bill contains all the averments necessary under the statute to the issue of the attachment, and was sworn to and filed at the institution of the suit, before the attachment was issued. The affidavit adopts the bill as a part of the affidavit, which was held in *Fisher & Brother* v. *March, supra,* to be a compliance with the law.

On March 13, 1891, J. C. O'Gorman executed and delivered to T. W. Tyrer the following instrument of writing:

"This is to certify that T. W. Tyrer is entitled to a one-tenth interest in that certain piece of land lying at the southern end of Chain Bridge, containing fifteen acres of land, which was deeded to me on the 12th day of March, 1891, and that the said Tyrer is further entitled to a one-tenth interest in the eighty thousand dollars, and the developments that may accrue therefrom, in accordance with the agreement made and entered into by and between myself and T. W. Tyrer and D. M. Sabin, John G. Nelson, Jacob Bean, Frank M. Prince, James O'Brien, R. M. Dixon, R. S. Buchanan, and D. B. Dewey, and that said interest is to be delivered to the said T. W. Tyrer by deed or in the capital stock of such company as shall be formed for the development of said land and the water power thereon, as the case may be, and such delivery shall be made on the demand of said Tyrer, his heirs, or assigns.

"In witness whereof I have hereunto affixed my hand and seal this 13th day of March, 1891.

"J. C. O'GORMAN.

"Witness: Ned G. Norris."

The rights of T. W. Tyrer under this instrument, and the relief to which he is entitled in consequence of the subsequent dealing of O'Gorman with the property, are the matters presented for decision.  The circumstances which led to the exetion of the instrument will be serviceable in the solution of these questions, and may be adverted to with benefit.  They do not contradict, nor vary its terms, but are consistent therewith, and under the light they shed on the transaction, the rights of the complainant will be more clearly discerned, and the relief to which he is entitled more readily determined.

On February 13, 1890, T. W. Tyrer obtained from George Hill, Jr,, an option for one month in favor of J. C. O'Gorman and himself for a lease of the land referred to in the instrument quoted above, and on March 13, 1890, Hill executed and delivered to Tyrer and O'Gorman a lease of the land for one year at the annual rent of $300, with the privilege of purchasing the same at any time during the year for $6,000.

After they had acquired the lease, O'Gorman represented to Tyrer that certain named persons were willing to put $80,000 into a corporation to develop the property, and to establish thereon an electric light and power plant to supply electric light to the cities of Washington and Georgetown, for which purpose the property, by its convenient location and inherent advantages, was peculiarly adapted, and thereby induced Tyrer to unite with him in transferring on March 27, 1890, to the said persons an eight-tenths interest in the lease and in the contract to purchase the property, provided they would pay $80,000 within sixty days into the treasury of a corporation to be formed by them and O'Gorman and Tyrer to develop and improve the property, and to establish thereon an electric light and power plant.

On March 12, 1891, O'Gorman, without the knowledge or consent of Tyrer, obtained from Hill a conveyance of the land and water power, and took the title thereto in his own name, but recognizing the rights of Tyrer under the lease and the

contract to purchase the property, he executed and delivered to Tyrer the declaration of trust of March 13, 1891, which is the foundation of the suit of the complainant.

Subsequently on January 12, 1892, O'Gorman, without the knowledge or consent of Tyrer, sold and conveyed ten acres of the land to the Potomac Electric Company for $75,000, which was paid to him in $25,000 of its capital stock, and $50,000 of bonds secured by a first mortgage upon the ten acres and the improvements thereon; and on April 13, 1892, he conveyed the residue of the land, to-wit, five acres, to J. C. Sprigg and Floyd S. Patterson, in trust to secure the payment of five notes of that date drawn by O'Gorman in favor of Louisa Patterson, and aggregating $4,480.

On June 20, 1892, O'Gorman hypothecated with Amherst H. Wilder the stock and bonds he had received from the Potomac Electric Company to secure the payment to Wilder of a loan of $27,040.

On July 18, 1892, Tyrer filed his bill against O'Gorman and the Potomac Electric Company, and caused the attachment to be issued and levied, and the *lis pendens* to be docketed.

The first question for consideration is the rights of Tyrer under the declaration of trust, and the relief to which he is entitled in respect to the ten acres of land conveyed by O'Gorman to the Potomac Electric Company.

By the representation of O'Gorman that certain named persons were willing to put up $80,000 and unite with him and Tyrer in organizing, within sixty days, a company to develop the properties to which they had secured certain rights and privileges, Tyrer was induced to unite with O'Gorman in transferring, by the agreement of March 27, 1890, to the said persons an eight-tenths interest in the said properties, rights, and privileges, and thereby to give up four-tenths of his interest therein; and by the representation of O'Gorman that the corporation contemplated by the said agreement would still be formed, and the $80,000 paid by the persons named,

Tyrer was induced to accept the writing of March 13, 1891, in recognition of the interest to which he was entitled in the land, or the interest to which he would be entitled if the $80,000 was paid, and the corporation organized by the persons named.

If O'Gorman had not conveyed away the ten acres, Tyrer would clearly be entitled to a deed for an undivided one-tenth interest in it; or if the persons named in the writing of March 27, 1890, and of March 13, 1891, had formed with O'Gorman and Tyrer the corporation contemplated by the agreement of March 27, 1890, and paid into its treasury $80,000 as they had contracted to do, he would be entitled to one-tenth of the capital stock of the company. But O'Gorman, by his conveyance of the ten acres to the Potomac Electric Company, rendered himself unable to convey any interest therein to Tyrer; and the particular corporation, to be composed of the said persons and Tyrer, and to be formed upon certain conditions, was never organized. Tyrer was thus defeated of his interest in the ten acres, and of the interest in the corporation which he had agreed to accept in lieu of his interest in the land. Defeated of his interest in the land by the conveyance made by O'Gorman to the Potomac Electric Company, without his knowledge or consent, and also of the interest in lieu thereof to which he would have been entitled in the corporation by the failure to organize it, for which failure he was in nowise responsible, he was under no obligation to accept in lieu of his interest in the land a tenth interest in the stock of the Potomac Electric Company, a corporation, with whose formation, so far as the record discloses, he had nothing to do, and which was composed, with the exception of O'Gorman, of altogether different persons, and was formed on altogether different conditions. He, therefore, became equitably entitled to one-tenth of the consideration received by O'Gorman from the Potomac Electric Company, to-wit, one-tenth of the $25,000 of its capital stock and $50,000 of its bonds, aggre-

gating $75,000; but these having been appropriated by O'Gorman to his own use, Tyrer was entitled to recover from him one-tenth of their value, to-wit, $7,500. The Circuit Court so decreed, and in this there was no error.

The next inquiry is as to the relief to which the complainant is entitled in the residue of the land.

His attachment was levied on this land, and the *lis pendens* docketed, on July 18, 1892. On the 25th of March following, O'Gorman conveyed the remaining five acres of the land to Peter McCartney, and on July 15, 1893, McCartney conveyed it to John Critcher in trust to secure the payment of a negotiable note which he had endorsed for O'Gorman to the Armington & Sims Engine Company. The property was sold by John Critcher, trustee, and bought by Gardner C. Sims for the sum of $8,500. It was contended that the debt to Louisa Patterson was paid out of this money, and that Sims, the purchaser, was entitled to be subrogated to the lien of her deed of trust.

Several suits having been instituted affecting the property in controversy, a decree was entered during the progress of the litigation directing an account of the liens thereon with their respective priorities. The account was taken by Commissioner Barley, who, in stating the liens, reported that the debt to Louisa Patterson was paid by O'Gorman, and the deed of trust made to secure the payment of her debt released to him by deed of release on March 7, 1894, whereby the attachment and *lis pendens* of Tyrer were entitled to precedence on the five acres of land, except as to the taxes for 1894. Sims excepted to the report of Commissioner Barley because it gave precedence to the *lis pendens* of Tyrer over the deed of trust to secure the debt to Louisa Patterson.

Commissioner Barley states positively and unqualifiedly in his report that the five notes, constituting the debt to Louisa Patterson, were paid in full by O'Gorman on March 7, 1894, and the deed of trust to secure the same released to him by deed of that date, duly recorded. The deed of trust to secure

this debt was the only lien on the five acres prior to the lien of the attachment of Tyrer and the docketing of his *lis pendens*, and if the debt to Louisa Patterson was paid by O'Gorman, the debtor, then, upon its payment by him, there remained no lien or debt to which the appellant could be subrogated, and the attachment and *lis pendens* of the complainant were entitled to precedence, as stated by the commissioner. It does not appear that the commissioner returned to the court with his report, the evidence on which it was based, nor that any steps were taken to have him do so, or to place the evidence before the court. By whom the debt to Louisa Patterson was in truth paid was a matter of fact to be shown by the evidence, and was easily susceptible of proof. No steps having been taken to put the court in possession of the evidence, we cannot hold that it did not justify the finding of the commissioner. He reported that the debt was paid by O'Gorman, and, in the absence of the evidence on which it was based, his report is to be taken as correct.

The averment in the answer of Sims that the debt was paid by John Critcher, trustee, out of the purchase money paid by Sims, and a similar statement in the copy of the account of the trustee filed with the answer, which were relied on here to impeach the finding of the commissioner, cannot be given such effect, even if entitled to be considered as evidence at all for that purpose, unless it appeared that the record contained all the evidence upon which the commissioner based his finding. But the averment in the answer not being responsive to any allegation of the bill was not evidence at all of the fact it was relied on to prove; and while the account of the trustee, which was inadmissible as evidence against the complainant if it had been objected to, would perhaps be entitled to be considered if all the evidence was before the court, yet, being the unsworn statement of the trustee, it would be deprived in law of much of the weight due to testimony regularly taken. If the money was paid by the trustee and not by O'Gorman, the

fact could have been easily proved by the testimony of the trustee, or by one or more of the several persons who must have been cognizant of the payment, but the record does not show that the appellant took any evidence to this end.

The court properly confirmed the report of the commissioner, and held that the attachment and *lis pendens* of Tyrer had precedence on the five acres, and that he was entitled to a conveyance of an undivided one-tenth interest therein, and also to subject the remaining nine-tenths thereof to the payment of so much of his debt established by the court against O'Gorman as should not be satisfied out of the property of the Potomac Electric Company as garnishee, after paying the debt of Amherst H. Wilder for which O'Gorman had hypothecated the bonds and capital stock of the said company.

We find no error in the decree of the Circuit Court, and it is affirmed.

*Affirmed.*