J. S. NOBLE & another *vs.* BENJAMIN F. FAGNANT.

Hampden.     September 26, 1894. — October 19, 1894.

Present: ALLEN, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Goods sold and delivered — Evidence — Tender — Breach of Warranty — Burden of Proof — Recoupment of Damages — Exceptions — Express Warranty — Implied Warranty.*

In an action for goods sold and delivered, the defence to which is a breach of warranty of the quality of the goods, statements of a third person, who is not shown to have any connection with the plaintiff, in regard to the proper mode of using the goods, are rightly excluded.

If a part of a circular relating to an article of merchandise is put in evidence by the defendant, in an action for the price of the article, he has no ground of exception to the admission of the whole of the circular on the offer of the plaintiff.

A tender by A. to B. of a sum of money, before suit brought, is an acknowledgment by A. of the cause of action, and he cannot afterwards avail himself of the defence, in an action by B. for goods sold, that B. in making the sale was only acting as agent of C.

If, in an action for goods sold, the defendant relies on a breach of warranty of the quality of the goods, the burden of proof is on him to establish the warranty and the breach of it.

If a breach of warranty of the quality of goods sold is established, the defendant is entitled, in an action for the price of the goods, to have deducted from the contract price the difference in value between what he bought and what he received; and, if the goods were bought for a particular purpose, and were warranted fit for that purpose, and the defendant, relying upon the warranty, applies them to that purpose and suffers damage by reason of their unfitness, he is entitled to recoup the damages so sustained.

No exception lies to the refusal to give instructions in the terms requested, if they are given in substance.

If, in an action for goods sold, the plaintiff's evidence shows a refusal to warrant the quality of the goods, and the defendant relies upon an express warranty and a breach of it, he is not entitled to have the judge, who has instructed the jury fully upon the question of an express warranty, point out, at the close of the charge, the difference between an express warranty and an implied warranty.

CONTRACT, upon an account annexed, by J. S. Noble and G. H. Carter, copartners as Noble and Carter, for goods, consisting of cement and lime, sold and delivered. The answer set up the following defences: 1. A general denial. 2. That the plaintiffs acted as agents only in the sale of the cement, and such agency was disclosed prior to the sale. 3. An express warranty of the quality of the goods, and a breach of the warranty. 4. That the defendant had suffered damage by reason of the breach of warranty, and claimed to recoup for such damage. 5. A tender of two hundred dollars before suit brought, which the plaintiffs refused to accept, and which the defendant paid into court. Trial in the Superior Court, before *Maynard*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiffs introduced evidence tending to show that they were merchants, in Springfield, dealing in grain and masons' supplies, and had for sale a cement known as King's Windsor cement, which was manufactured in New York by J. B. King and Company, of whom they purchased through a travelling salesman by the name of Bronson; that Bronson left with them samples prepared by and showing what J. B. King and Company claimed would be the appearance and quality of the cement when mixed according to direction and properly placed upon a wall, and also a circular purporting to be issued by J. B. King and Company, setting forth their claim in regard to the cement, with directions for mixing, but that the plaintiffs' names nowhere appeared either on the samples or the circulars; that they bought and paid for this cement in the usual way; that they were not agents for J. B. King and Company, and did not sell the cement on commission, and never represented otherwise to the defendant; that they never employed agents to go out and represent them; and that Bronson was not their agent or in their employ, and had no connection with them, except that they bought the cement through him. The plaintiff Noble testified that the defendant came to their office to inquire in

regard to the cement in the fall of 1890, and was told the price, $2.75 per barrel, and that " I showed him a sample as given to me by the manufacturers," meaning a sample of the finished plastering, " and finally agreed to let him have the cement at $2.65 per barrel, as it was the first lot we had had for sale"; that " we could not guarantee anything in regard to it, and I sold it to him with the understanding that, if properly mixed according to directions, I presumed it would make as good a wall as represented." The plaintiffs also testified that the sample shown to the defendant was one given them by J. B. King and Company, and they so stated to the defendant; that they informed the defendant they could not guarantee the cement, because all that they knew about it was what was represented to them; that they had circulars in the office, but only gave them to people inquiring about the cement, and told them that that was the way they, the plaintiffs, received the cement; and that an agreement was concluded with the defendant as to the cement and lime, which was all furnished under one contract, but at different dates.

The defendant testified as follows: " The first I have known of King's Windsor cement was when the building was getting part way, I guess beginning the first story above the basement. A man came to me giving his name as Bronson, representing himself as the agent of the company, and giving me a sample and a circular [producing circular]. I don't say this is the one, but one just like it. This was got from Noble and Carter. I had never had anything to do with Noble and Carter but what I said in the office. When I went to Noble and Carter I was sent there, and I told them what Bronson had told me. ' Well,' he [Noble] says, ' anything that Mr. Bronson will tell you the company will back up.' I asked him what he thought. He said he did n't know anything about it. He told me what it was, what difference there was between that and common mortar; he said it would not peel off, nor crack, nor rub. He says, ' We don't know anything about it, because we only sell it on commission.' Besides that, I was telling Mr. Noble I had been approached by the agent of the adamant. I told him that if the King's Windsor cement was as good as represented I would give him an order for it, because it was only half the price;

it would cost me ten cents a pound, while the other was going to cost me twenty. He says, 'I can't tell you anything, because we are only agents, only selling it on commission. Besides, it won't do for me to say anything to induce you to take one or the other, because we sell both.' I entered a complaint only when we got the second lot. After we had put it on four tenements, we got out of it, and had to wait for some more. The first lot we used just as the directions said, two to one. When we got the second lot the orders were, whenever there should be anything at fault to let them know. It was Bronson that gave me the order. I went there to Noble and Carter, telling them that the second lot would not work at all; that they had used it with more sand, and only in that way could they work it at all. 'All right,' Noble said, 'I will let the company know, and the agent will come.' When the agent came, they told him what it was doing, and how it was working. Noble and Carter never referred me to Bronson. They said one time when I was there, that whatever Bronson should represent the company would make right; and every time I went to inquire or find fault, they said they would write to the company, and never anybody but Bronson came to me."

The defendant further testified as follows:

" *Q.* Do you know whether the directions were printed upon the barrels? *A.* They were, sir.

" *Q.* And were those directions followed in the mixing and putting on of the cement? *A.* They were followed as long as we could follow them, but when we were directed differently, because of the impossibility of fulfilling them, it was through the agent that was sent to us. When I went to Noble and Carter, then we followed what directions were given us. But no directions came from Noble. Bronson gave us all the directions we had.

" *Q.* Whether the walls are hard or soft? *A.* They are a great deal softer than the sample, and I show you the sample now.

" *Q.* What is the condition of the outside coat, that is, the hard finish coat, as to whether it will rub off or not? *A.* It rubs off so you can't go by the walls without getting your clothes all dusty.

"*Q.* What is its condition as to cracking? *A.* It is all cracked.

"*Q.* Whether in one room or more? *A.* All the rooms more or less. It is cracked so badly that after being painted you can see the cracks. All over some places it is peeled off. You can't cover them. I have had skilled workmen there, and they can't cover them with paint."

To meet this testimony of the defendant, evidence was introduced by the plaintiffs tending to show that all defects and troubles with the cement were caused by improper manipulation, excessive use of sand, and improper exposure, on the part of the defendant.

The defendant also testified that he informed the plaintiffs that the material was to be used for the purpose of plastering and hard finishing the walls and ceilings of rooms in a block the defendant was then erecting.

The defendant introduced evidence that the sample shown to him was hard and strong, and the sample of hard finish was smooth and hard; and there was evidence of an expert, that he had analyzed the same, and that the sample delivered to the defendant contained twenty per cent more hardening material than the goods which were delivered to the defendant.

Evidence was offered tending to show that the walls of the defendant's premises were badly cracked in all directions, and that the last coat, which was called hard finish, was so soft that it rubbed off like chalk; and the defendant's witnesses testified that the soft condition of the hard finish was caused by defective material and absence of hardening material. This evidence was contradicted.

One McGarrett, a witness for the plaintiffs, testified in his deposition, in response to the question, " Did Bronson come to Noble and Carter's place of business frequently? " that he did, and, in response to the question, " What business had he there ? " that " It was a stopping place to confer relative to the use and sale of King's Windsor cement," and further as follows: "*Q.* Did Noble and Carter, or you, acting for them, correspond with J. B. King and Company in reference to the cement sold to Dr. Fagnant? *A.* My impression is that we did." "*Q.* Did J. B. King and Company send some one to examine the cement

on the building in Springfield? *A.* There was a man came, Bronson by name, and I suppose J. B. King and Company sent him." He also testified that the plaintiffs did not sell King's Windsor cement on commission, and handled no goods on commission; that they purchased the cement of J. B. King and Company, through Bronson; that Bronson had no connection whatever with the plaintiffs; that the plaintiffs did not refer the defendant to Bronson when complaining about the cement; that he did not know what connection Bronson had with J. B. King and Company; and that Bronson came to the plaintiffs frequently to sell them cement, and his business was to sell the cement and to induce parties to use it, but he never sold cement for the plaintiffs, nor endeavored to induce people to use this cement on the plaintiffs' account, nor acted for them in any way with reference to the use or sale of their cement, and was never employed by them for any purpose whatsoever.

The defendant offered the statements of Bronson to show that he instructed them to use more sand; and that a portion of the cement was mixed according to the directions given by Bronson. The judge excluded the evidence; and the defendant excepted.

The defendant put in evidence a portion of the circular referred to in the testimony of the plaintiff Noble and the defendant, whereupon the plaintiffs offered in evidence the whole circular, which was admitted, against the objection and exception of the defendant.

The defendant asked the judge to instruct the jury as follows:

" 1. If the jury believe that the plaintiffs were acting as agents selling on commission, then the defendant is entitled to a verdict.

" 2. If the jury believe that the plaintiffs were not acting as agents, but were acting as principals, and Bronson made the representations which are testified to by the defendant with the knowledge, consent, or authority of the plaintiffs, and the defendant, relying upon such representations, and being induced thereby to purchase the material, has been damaged thereby, then the defendant is entitled to a reduction of such amount as the jury believe he has been damaged.

"3. If the jury believe that the representations made by or with the knowledge or consent of the plaintiffs and relied upon by the defendant, inducing him to purchase the cement, were such as to lead a person to believe that, after the material was applied, it would not rub off, and the jury believe the same was applied as directed, and the same did and does rub off, and thereby renders the walls and ceilings defective, then the defendant is entitled to an allowance against the plaintiffs for such an amount as it will be necessary to expend to put the walls in a reasonably proper and suitable condition, together with the amount he has already expended for repairing the same more than would have been required if hair and lime mortar had been used, and also to such rent as he may have lost by reason of the defective condition of the walls.

"4. If the jury believe that the plaintiffs represented and held themselves out to be agents only, then the plaintiffs are bound by such representations, and are estopped from now claiming that they were and are principals, and the defendant will be entitled to a verdict.

"5. If the jury believe that the plaintiffs, either by themselves or their agents, represented the material to be of as good quality as the sample, and the defendant, relying upon such representation, purchased such material, and the material was of less value and quality than that shown in the sample, then the defendant is entitled to an offset against the plaintiffs for the difference in value.

"6. If the jury believe that the plaintiffs warranted the material, or authorized the same to be warranted, or adopted the warranty made by any other person or persons, then the burden is upon the plaintiffs to prove that the material furnished was in all respects equal to the warranty.

"7. If the jury believe that the plaintiffs warranted the material to be of a certain quality, or authorized the same to be warranted, or adopted a warranty of another person, or, knowing the same to have been warranted, allowed the defendant to purchase the same relying upon the warranty, and it is contended that the imperfect condition of the walls was caused by improper manipulation of the material, then the burden is upon the plaintiffs to prove that the material was not properly manipulated.

" 8. If the jury find that the plaintiffs or their agent had instructions as to the method of mixing and laying the material, and such instructions were followed, and the walls are in an imperfect condition, then the defendant is entitled to recover of the plaintiffs such sum as it will cost to put the walls in proper condition.

" 9. The tender is not to be taken as an acknowledgment that the defendant owes the plaintiffs the amount of money tendered, nor as an admission by the defendant that he owes the plaintiffs any amount, but the jury are at liberty to find what amount, if any, is justly due from either party to the other.

" 10. If the plaintiffs put out or distributed written or printed circulars, or allowed the same to be delivered, which circulars represented King's Windsor cement to be a first-class material and a merchantable article, and the defendant, relying upon such representations, purchased said material, and the material was not as represented in the circulars, and the defendant has thereby been injured, then the defendant is entitled to an allowance for such sum as it will cost to make it equal to sample.

" 11. If the plaintiffs referred the defendant to Bronson as a party qualified to give the requisite information as to the quality of the material, such reference would operate as an adoption of Bronson as their agent, and the plaintiffs would be bound by such representations as Bronson might make in reference to it, and if the jury find that the material was not as represented by Bronson, then the defendant is entitled to an allowance of such an amount as it will cost to put the walls in proper shape.

" 12. If the plaintiffs made sale of the goods in question, knowing the use to which they were to be put, such sale carried with it an implied warranty that the goods were suitable for the work required, and if the jury find that the goods were not suitable for the work required, then the defendant is entitled to an allowance for such sum as will be required to put the walls in proper condition.

" 13. If the plaintiffs represented themselves to be agents in the sale of the King's Windsor cement, and thereby sought to avoid responsibility as to the quality of the goods, then the plaintiffs are estopped from maintaining this action, and must be

considered, for the purposes of this cause, agents only, and not entitled to maintain this action.

" 14. If the plaintiffs employed or authorized Bronson to sell or negotiate for the sale of cement on their account, or if the plaintiffs had acknowledged that Bronson was so acting, and Bronson induced the defendant to buy, and made fraudulent or false representations as to the cement, or warranted that it was superior to lime and hair mortar and would not rub, check, or crack, upon which representations the defendant relied and by which he was induced to purchase, then the plaintiffs would be responsible for the warranties or misrepresentations by Bronson, notwithstanding the fact that the plaintiffs did not know that Bronson made such representations or gave such warranty prior to his doing so, and if the plaintiffs were informed prior to the sale that the defendant had been induced to purchase by the warranty and representations made by Bronson and had been sent to the plaintiffs to make the purchase, the plaintiffs cannot avoid their liability by a statement that they knew nothing personally about the plaster."

The judge refused to give the rulings requested, but instructed the jury, among other things, as follows :

" When a man pleads a tender and brings it into court, he acknowledges by that act that so much as he tenders and brings into court is due, and he acknowledges the contract upon which the same is tendered. So that by making that tender and bringing that money into court the defendant acknowledges that the contract existed, and that there was the sum of two hundred dollars due on it, and so he is estopped now to deny that there was a contract with these plaintiffs, and he cannot set up as a defence that they were not principals and owners of the goods, but were agents of somebody else, so that the question that was set up as an answer, that these were not their goods and they had no right to them, but they were agents of the New York firm, is not open to the defendant.

" Now, was there a warranty of these goods by the plaintiffs ? In the sale of personal property the affirmation by the seller of any essential quality of the goods would be a warranty. But there is something besides that in order to make a seller liable for breach of warranty. There must not only be an affirmation

of some essential quality by the seller made at the time of the sale, but that affirmation must be a material inducement to the purchaser upon which he relied, in order, in case the goods are not up to the affirmation, to make it a breach of the warranty for which the seller would be liable. That is, in order to entitle a defendant to set up a breach of warranty, there must not only be the warranty, but he must satisfy you that he relied upon that as an inducement, not necessarily the whole inducement, but relied upon it as a material inducement for the purchase of the goods. That is, if a party acts on his own judgment in buying goods, or acts upon the representation of somebody outside of the seller for whom the seller is not responsible, and relying upon his own judgment and the representations of somebody outside of the seller, or either one of them, not relying in any material sense on what the seller says, then the seller is not responsible, because the man is not induced by anything the seller says to make the purchase. The man must have suffered by the wrongful act of the seller.

"Now a party selling goods is responsible for the acts of his agent, for the representations of his agent, the same as though they were his own, that is, representations made within the scope and the line of authority and duty of the agent. That is, if an agent, while prosecuting his master's business, makes a representation in regard to that business, if employed in selling goods in regard to the goods, it would be the same as though the master made them. But the representations of any person outside, who is not the agent, are not the representations of the master, and the master would not be liable for them. Now in this case there has been some evidence of what a man named Bronson said in regard to those goods. I shall have to instruct you that in this case, upon the defendant's testimony and upon the plaintiffs' testimony, upon all the testimony, there is no evidence from which you can find that Bronson was the agent of these plaintiffs. It was agreed, and there is no dispute, that he was the agent of the New York firm. But anything which was said about it, either by Carter, who was one of the plaintiffs, or by Noble, or by the clerk whose deposition you have heard, — I think those were the only other parties, — any representations made by them the plaintiffs would be responsible for.

" Now, was there a warranty? You have heard from those different parties what was said there, and if there was any warranty of these goods it was made at that time, as I suggested to you in the early part of my instructions. All the other testimony in regard to it is simply evidence for your consideration as bearing upon the question of what was said and done there. Of course, the actions of parties are always to be taken into account, and their words have to be judged by their actions oftentimes, so that what was said and done afterwards is evidence bearing upon what was said and done at the time when the price was fixed for the goods. Well, upon the evidence it is for you to determine whether these goods were warranted by these plaintiffs. If they were not warranted by these plaintiffs, then there is no defence to this action or any part of it. It is for you to determine whether there was a warranty, and if there was, was there a breach of it? Was it or was it not what it was represented to be?

" If you find there was a warranty and a breach, if the goods were not equal to the warranty, the defendant would have a right to have deducted from the contract price the difference in value between what he bought and what he got. The defendant has set up in his answer also, not only that the articles were not as good as what he bought, as what was warranted, but that he was induced to use them, and used them in such a manner that he has been damaged and injured thereby. Now, if the defendant bought the goods for a certain purpose which the plaintiffs knew, and they were warranted to be of a certain kind, and they were not of that certain kind, and the defendant believing or having reasonable cause to believe that they were of the kind warranted, and were proper and suitable for the work which he put them into, and relying upon that he did put them into a certain kind of work, and if he suffered loss on account of using them in that way, then whatever loss was the natural result of his using them for that purpose he would be entitled to recoup in the way of damages."

The defendant excepted to the refusal to rule as requested, and to so much of the charge as related to the effect of a tender, and to the question of Bronson's agency.

At the close of the charge, the defendant asked the judge to

point out the difference between a specific and implied warranty. To this the judge replied, "I think I have covered the ground fully," and declined to give further instructions; and the defendant excepted.

The jury returned a verdict for the plaintiffs; and the defendant alleged exceptions.

*A. M. Copeland & A. Webster*, for the defendant.

*W. B. Stone*, for the plaintiffs.

KNOWLTON, J. 1. The statements of Bronson in regard to the proper mode of using the cement were rightly excluded. The plaintiff Noble and his clerk testified that Bronson had no connection with the plaintiffs, and the defendant also testified that the plaintiffs never referred him to Bronson, and that in his interviews with them they always represented Bronson to be the agent and representative of the manufacturers, J. B. King and Company, and not of themselves.

2. No error appears in the admission of the circular as a whole on the plaintiffs' offer after a part of it had been put in by the defendant. The bill of exceptions does not show what part was introduced by the defendant, and what was subsequently put in by the plaintiffs. As a general rule, when a part of a document is introduced by one party, the other is entitled to put in the remainder of it.

3. The judge rightly ruled that the defendant by his tender acknowledged the cause of action, and that he could not afterward avail himself of the defence that in making the sales the plaintiffs were only acting as agents of J. B. King and Company. *Hubbard* v. *Knous*, 7 Cush. 556. *Bacon* v. *Charlton*, 7 Cush. 581. *Hosmer* v. *Warner*, 7 Gray, 186. *Bouvé* v. *Cottle*, 143 Mass. 310.

4. The instructions in regard to the warranty were correct. If the defendant relied on a breach of warranty of the quality of the article sold, the burden of proof was on him to establish the warranty and the breach of it. *Dorr* v. *Fisher*, 1 Cush. 271. *Lothrop* v. *Otis*, 7 Allen, 435. The rule of damages to be allowed for a breach of a warranty, both in ordinary cases and when the goods are sold for a particular use, was rightly given. Without considering in detail the instructions requested by the defendant, we are of opinion that, so far as the propositions of

law contained in them were correct and pertained to the case, they were covered by the charge, and that there was no error in the refusal to give them as presented.

Upon the testimony of the defendant, as well as upon that of the plaintiffs, there was no occasion to point out the difference between an express warranty and an implied warranty, as the defendant requested the judge to do at the close of the charge.

*Exceptions overruled.*