*Southern District*

No. 15406

## MARTIN TUCKER

v.

## MYER PEARLSTEIN

*Welch, J.* This is an action of contract for goods sold in which the plaintiff seeks to recover $289.90 for an alleged balance due for certain pullets and bales of shavings sold to the defendant. The answer is a general denial and an allegation of breach of warranty of soundness.

*At the trial before (Grover, J.), there was evidence tending to show the following*: The plaintiff sold and delivered to the defendant 500 live pullets at $2.40 each and 18 bales of shavings at 55 cents each. The price was fair and reasonable. The defendant paid $920 before delivery, leaving a balance of $289.90. The plaintiff told the defendant that the pullets were "all perfect, vaccinated and o.k." The defendant assisted the plaintiff in removing the pullets from the plaintiff's hen house which was dimly lighted, after dark, to a truck. The plaintiff

had requested that delivery be made after dark and this request was acceded to by the defendant who had known the plaintiff for 18 years. The defendant placed the birds in a separate section of his hen house so that they were not mingled with other birds. This section had not been used for a year and had been disinfected before the birds were put into it. The morning after delivery the defendant found that two of the pullets were dead, but he did not know the cause of death. Three days later a total of eight had died. In all 105 of the pullets died.

Three days after delivery the defendant by telephone told the plaintiff that some of the birds had died. The plaintiff then came to the defendant's hen house, examined the birds and gave them medicine. The elapsed time during which the 105 pullets died did not appear.

The plaintiff testified that he knew of a disease called "fowl typhoid", a bacterial disease for which no remedy had been found and was caused by the birds drinking water from a supply which had been contaminated by rats or wild birds drinking from the same container. The disease manifested itself in from one to three days by the comb shrinking and the bird moping in a corner. The defendant's testimony was that the combs of the dead birds had shrunk. There was no testimony as to how soon death would occur after the first manifestation of the disease.

The plaintiff claims to be aggrieved by the judge's refusal to give the following requests for rulings:

3. The evidence introduced by the defendant is insufficient to constitute a defence to this action.

6. The defendant has failed to sustain the burden of proof that due notice was given to the plaintiff of a breach of warranty.

7. There is no evidence of a breach of warranty.

The judge refused the rulings and stated that he found that the plaintiff's representation that they were "all beautiful, healthy birds, all perfect,

vaccinated and o.k." was materially false and that the defendant with reasonable promptness notified the plaintiff of his claim for breach of warranty.

He found that the defendant owes the plaintiff $948 for the 395 pullets which survived and $9.90 for the shavings—a total of $957.90, and having paid $920, owes a balance of $37.90.

We think there was error in the court's decision.

In its aspect most favorable to the defendant the evidence showed that the pullets were delivered at plaintiff's request from a dimly lighted hen house; the defendant placed the birds in a separate section of his hen house so that they were not mingled with other birds. This section had not been used for a year and had been disinfected before the birds were put into it; the morning after delivery the defendant found that two of the pullets had died, but the cause of death was not known; three days later eight had died. In all 105 died; the combs of the dead birds had shrunk. The plaintiff knew of a disease called "fowl typhoid" which manifested itself in from one to three days by the comb shrinking and the bird moping in a corner. The combs of the dead birds had shrunk.

The evidence did not afford a basis for more than a conjecture that the birds were unsound at the time of delivery. *Monahan v. Economy Grocery Stores, Corp.*, 282 Mass. 548.

It is not known whether the pullets died because of weather conditions, injury during transportation, from natural causes, destruction by other animals, or from some infection picked up in the defendant's hen houses. There was no post mortem examination of the birds to determine the cause of death and no evidence as to the cause of death.

When a defendant relies on a breach of warranty of the quality of the birds the burden is on him to establish the warranty and the breach of it. *Noble v. Fagnant,* 162 Mass. 275. The defendant has not

sustained that burden. Plaintiff's requests Nos. 3 and 7 should have been allowed.

There was no error in the refusal to allow request No. 6. Three days after the purchase, when eight pullets had died, the defendant notified the plaintiff. The judge found that notice was given to the plaintiff of the breach of warranty within a reasonable time. This is a question of fact, *Smith v. Denholm & McKay Co.*, 288 Mass. 234, 241. It satisfies the requirements of G. L. c. 106, §38.

*The finding for the plaintiff is vacated. Judgment is to be entered for the plaintiff in the sum of $289.90.*

Morris E. Markson, for the plaintiff.

Maxwell Kream and A. T. Handberger, for the defendant.