# CHARLESTON.

VARNEY & EVANS v. HUTCHINSON LUMBER & MFG. CO.

Submitted February 7, 1911. Decided December 19, 1911.

1. CORPORATIONS—*Powers and Liabilities—Representation by Officers—Authority of President.*
   The president of a corporation has no inherent power to make contracts on its behalf. (p. 171).

2. SAME.
   Authority in the president of a corporation, engaged in the manufacture and sale of lumber, to purchase expensive machinery for use in its business, cannot be inferred from his management and control of its ordinary business. (p. 173).

3.   SAME—*Powers and Liabilities—Representations by Officers—Evidence.*

The authority of the president of a corporation to make a' certain contract on its behalf being in issue in a trial, it is error to exclude his offered testimony denying such authority.   (p. 172).

4.   SAME.

Evidence of management of the ordinary business of a corporation, engaged in the manufacture and sale of lumber, by its president, is insufficient to sustain a verdict against it for purchase money of expensive machinery for use in its business, on the theory of a contract made by the president, in the absence of evidence of ratification of the alleged contract, by the defendant or reception of the benefit of the contract.   (p. 173).

Error to Circuit Court, Mingo County.

Action by S. M. Varney and another party, partners under the firm name of Varney and Evans, against the Hutchinson Lumber and Manufacturing Company.   Judgment for plaintiffs, and defendant brings error.

*Reversed and Remanded.*

*Wyatt & Graham,* and *Shepperd, Goodykoontz & Scherr,* for plaintiff in error.

*Stokes & Bronson,* for defendants in error.

POFFENBARGER, JUDGE:

After this case was remanded to the circuit court of Mingo county, in obedience to the decision of this Court, as reported in 64 W. Va. 417, a trial was had which resulted in a verdict for the plaintiffs for the sum of $1,230.00, a portion of which was released to prevent the court from setting it aside, and judgment was rendered for the residue thereof, $558.40.

Insufficiency of the evidence to sustain the verdict and the exclusion of certain testimony are the only assignments of error we deem it necessary to pass upon.   The defendant is a corporation and the verbal contract sued upon is alleged to have been made with its president.   This was a contract for the purchase of a portable engine and a saw mill at the price of $1,230.00. As stated in the evidence for the plaintiff, it was very informal, and whether it was made or not seems to depend largely upon

the credibility of two men, the agent of the alleged vendors and the president of the defendant company, who explicitly denies the purchase and almost every fact and circumstance relied upon as indicating it. There was no proof of any express authority in the president of the corporation to make the purchase, and no conduct on his part or on the part of the corporation, tending to show such authority is in evidence except his alleged purchase of the engine and saw mill, and his admission that he had charge of the business of his company "to a certain extent" in Mingo county, and of its "opeartion" in a certain place "so far as the manufacture was concerned and shipments, etc." The court refused to allow the defendant to prove by him that his company had not in any way authorized him to purchase this property. It is also conclusively shown that the company never accepted the property nor had it in its possession at any time.

The defendant was not a dealer in engines and saw mills. It was engaged in the lumber business. Though machinery of the kind alleged to have been sold may have been owned and used by it, its general purpose was not the purchase of such machinery for resale. In other words, it was not a dealer in machinery. The disposition of the two assignments of error, therefore, must depend largely upon the legal inquiry as to whether the president of such a corporation has inherent authority to purchase expensive machinery to be used by it in its business, or to constitute what may be called its plant or a substantial part thereof.

Of the power of the president of a corporation, Cook on Corporations, at section 716, says: "His duty is merely to preside at meetings of the board of directors, and to perform only such other duties as the by-laws or resolutions of the board of directors may expressly authorize. This is a rule established by the great weight of authority. The board of directors may of course expressly authorize the president to contract: or his authority to contract may arise from his having assumed and exercised that power in the past; or the corporation may ratify his contract or accept the benefits of it and thereby be bound. But the general rule is that the president cannot act or contract for the corporation any more than any other director." Morawetz

on Corporations, at sections 537-38, substantially agrees with Cook's statement of the law. It says: "The implied powers of the president of a corporation depend upon the nature of the company's business and the measure of authority delegated to him by the board of directors. It seems that a president has no greater powers, by virtue of his office merely, than any other director of the company, except that he is the presiding officer at the meetings of the board.    *    *    *    However, the presidents of corporations, by general custom, exercise much wider powers than those accorded to them by the authorities cited in the preceding section; and this custom has been judicially recognized." The power exercised by general custom, judicially recognized, has its limitations, however, as shown by the authorities cited in support of the text. Cook, at section 716 of his work, also refers to it in these terms: "The fact, however, that he is almost always the corporate officer who is directed to sign the corporate contracts that have been authorized by the board of directors has led to an enlargement of his importance as a corporate officer. Hence the rule has arisen in New York that a contract, which apparently is a corporate contract, being signed by the president, is ·presumed to be a corporate contract until the want of authority of the president is shown by the corporation." He then shows that a few courts have gone further. Proceeding, Morawetz says, at section 538: "There can be no doubt that the board of directors may invest the president with authority to act as chief executive officer of the company. This may be done either by an express resolution, or by acquiescence in a course of dealing. A person dealing with the president of a corporation in the usual manner, and within the powers which the president has been accustomed to exercise without the dissent of the directors, would be entitled to assume that the president had actually been invested with those powers." A few cases may go beyond this doctrine, but it undoubtedly states the limits of the powers of the president of a corporation as recognized generally throughout the country. It accords with the principles declared and applied by this Court. *Bank* v. *Kimberlands,* 16 W. Va. 555; *Bank* v. *Mfg. Co.,* 56 W. Va. 440; *Thompson* v. *Mfg. Co.,* 60 W. Va. 42.

The admissions of the president as a witness in the case

show conduct or a course of dealing indicating some authority in him to represent his company. To anticipate such evidence and show he had no authority to purchase this property, he offered to testify that his company had not conferred it upon him. The extent of his authority was a fact for the jury, unless it was so plainly established by the evidence that the court could declare it as matter of law. As his admissions were obviously not conclusive, and there was no other evidence tending to show his authority, the question was one for jury determination, upon which the court should have admitted all relevant and material evidence offered. Hence, we think the rejection of the offered testimony to prove want of authority was plainly erroneous.

Moreover, we are of the opinion that the evidence relied upon to prove authority to make the contract is wholly insufficient. As we have said, the corporation was not a dealer in machinery. Authority in the president to buy it could not be inferred from his management of the company's business, if his admissions can be regarded as sufficient to prove his character as manager. There is no proof of any course of dealing sufficient to justify such an inference. It does not appear that he had ever before bought, for or on behalf of his company, an engine or saw mill or any other machinery, apparently designed for use as a part of its plant. All that he said is that he has, or had had, charge of its business in Mingo county "to a certain extent," and charge of a certain "operation" in that county. There is no evidence of any established course of business, or conduct on the part of the president, relating to transactions of the kind involved here, and acquiescence of the company therein, nor of ratification of the alleged contract, nor of the reception of benefit thereof in any sense or degree. The company never accepted the property or any part of it. Hence, the court should have directed a verdict for the defendant as requested, and, not having done so, should have sustained the motion to set aside the verdict.

The erroneous judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*