# CHARLESTON

Newman *et al.* v. Levi *et al.*

Submitted February 25, 1914.   Decided April 28, 1914.

1. Assumpsit, Action of—*Recovery of Attorney's Fees—Common Counts.*

   Fees for services rendered by an attorney-at-law in a suit or legal proceeding may be recovered upon the common counts in an action of assumpsit against his client.   (p. 225).

2. Pleading—*Bill of Particulars—Sufficiency.*

   A bill of particulars filed with the declaration in such action, giving date of the services, the suit or proceeding in which they were rendered and the sum charged for the entire services is sufficient. (p. 224).

3. Tender—*Effect—Admissions.*

   A debtor who appears to the action and tenders a certain sum in satisfaction of the creditor's claim thereby admits every fact which plaintiff would have to prove to entitle him to a judgment for the amount tendered.   (p. 226).

Error to Circuit Court, Ohio County.

Action by Charles C. Newman and others against David Levi and others.   Judgment for plaintiffs, and defendants bring error.

*Affirmed.*

*John A. Howard* and *McCamic & Clarke,* for plaintiffs in error.

*J. B. Handlan,* for defendants in error.

Williams, Judge:

This writ of error was awarded defendants to a judgment for $9,500, in an action of assumpsit by Chas. C. Newman, Martin Brown and John J. Coniff for the value of professional

legal services rendered in behalf of the defendants, David Levi and H. W. Hunter, in a certain bankruptcy proceeding in the federal court against the Bituminous Coal Company of America, in which a coal lease made by said Levi and Hunter to said company was involved. They had leased to said company 1172.45 acres of coal and 28 acres of adjoining surface. The lease provided for the payment of minimum annual royalties and, in default of their payment on or before 1st September, 1909, authorized the lessors to avoid the lease, after giving thirty days notice of their intention so to do. The company defaulted, owing the lessors over $26,000 of royalties. Levi and Hunter caused notice of their intention to forfeit the lease to be served upon said company, but before the expiration of the thirty days, some of the company's other creditors had instituted bankruptcy proceedings against it. The result was a long drawn out and tedious litigation in the federal court, and a sale and purchase, by the lessors, of_ the lease at the price of $4,000, including the machinery and improvements which the lessees had erected on the leased premises in the meantime, aggregating about $53,000 in value.

Plaintiffs are not partners in the practice of law, but rendered joint services for defendants in that proceeding, engaging in numerous consultations with them, and making many appearances before the federal court and the referee in bankruptcy, in looking after their interests. After the litigation had ended plaintiffs rendered a joint bill for $8,000 which defendants refused to pay. They thereupon brought the present suit. After pleading the general issue, and before the jury were sworn, defendants tendered $1,500 in satisfaction of plaintiffs' demand which they declined. Thereupon a trial was had resulting in a verdict and judgment for plaintiffs for the sum above stated.

The first assignment of error is the overruling of defendants' motion for a more specific bill of particulars. The account filed with the declaration styles the action, sets out in full the names of plaintiffs and the names of defendants, and then proceeds as follows:

"David Levi and H. W. Hunter Dr.

To Charles C. Newman Martin Brown and John J. Coniff. June 1-11. For professional services rendered by the above

named plaintiffs for David Levi and H. W. Hunter in the Bankruptcy proceedings against the Bituminous Coal Company of America lately pending in the United States District Court for the Northern District of West Virginia. $15000.00. Interest on the above amount will be claimed from June 1st, 1911.''

We think this bill of particulars was a sufficient compliance with the law. It apprised defendants of the amount of the claim and that it was for professional services rendered in a particular suit of which they were themselves fully cognizant. It is not the custom among lawyers to keep account of, and make separate charges for, every hour of time spent in investigating doubtful points of law, in the preparation of legal documents, in appearances in court for motion or argument, or before a commissioner in chancery or referee in bankruptcy, in taking depositions, or in consultations with clients. when all these things occur during the progress of an important and long continued suit. They do not keep and render their accounts, according to the custom among physicians who usually charge for their services by the number of their visits to their patients, at so much per visit. But the custom among lawyers, and, so far as we know, it is the universal practice to render bills for a single charge for all services rendered on behalf of their client in a particular suit. In view of the following authorities we think the bill of particulars was sufficiently explicit, and fully apprised defendants of the nature of plaintiffs' demands. *Fitch* v. *Leitch,* 11 Leigh 471; *Moore* v. *Mauro,* 4 Rand. 488; *Watts et al.* v. *Railroad Co.,* 48 W. Va. 262. If there had been a count in the declaration, alleging that the claim was for professional services rendered for defendants in a particular litigation, then there would have been no need to file a bill of particulars. Its use grew out of the employment of the common counts in actions of debt and assumpsit, which were so general in character as not to advise defendant of the particular nature of plaintiff's claim, and was designed to amplify the pleadings. 3 Enc. Pl. & Pr. 518; *Clark* v. *Railroad Co.,* 39 W. Va. 732. The declaration contains the common counts only, and does not apprise defendants of the nature of the services rendered, whether professional or other-

wise. But the bill of particulars supplies this information; and fees for professional services of an attorney-at-law are recoverable upon the common counts for the price and value of work and labor performed. *People &c. Co.* v. *Darrow,* 70 Ill. App. 20, affirmed in 172 Ill. 62.

The second assignment of error is that no joint contract of employment was proven, and plaintiffs, not being partners in the practice of law, could not maintain a joint action for their fees; and the third assignment is, that it was error to admit the testimony of plaintiff Brown to prove that he was agent of defendants for the purpose of employing co-counsel. These assignments are not well taken, for the reason that defendants' tender of $1,500 in court was an admission of all facts necessary to be proven to entitle plaintiffs to a judgment for that amount. 21 A. & E. E. Pl. & Pr. 582; 38 Cyc. 164. But the third assignment is not good for still another reason, and that is, that Brown was in fact competent to prove his agency. Declarations of an agent, made in the absence of his principal, are not admissible to prove agency, because it would violate the rule against hearsay evidence. But the agent himself is not incompetent to prove the fact of agency. *Garber* v. *Blatchley,* 51 W. Va. 147. The bill of particulars showed that plaintiffs relied upon but one cause of action; and the tender, after appearance to the suit, was a conclusive admission of every fact which plaintiffs would otherwise have had to prove in order to maintain their action. Tender, after suit brought, has been held to preclude the defense of contributory negligence in an action for damages in a personal injury case, *Bacon* v. *Inhabitants of Charlton,* 61 Mass. 581; to preclude opposition to the form of action, *Bailey* v. *Bucher,* 6 Watts (Pa.) 74; to be an admission that plaintiff has a right to maintain the action, *Noble* v. *Fagnant,* 162 Mass. 275; and, in an action against a railroad company for killing stock, a tender is an admission of plaintiff's title, *Scott* v. *Chicago &c Ry. Co.,* 78 Iowa 199. "A debtor by tendering a certain amount to his creditor must be held to admit every fact which the creditor would be required to prove to entitle him to a decree for the amount tendered." *Price* v. *Jester,* 137 Ill. App. 565. The following cases are also directly in point: *Griffin & Adams*

v. *Harriman,* 74 Iowa 436; *Metropolitan &c. Bank* v. *Commerce State Bank,* 104 Iowa 682.

Plaintiffs clearly had a right to judgment for the amount tendered, for the tender admits the right of plaintiffs to maintain the joint action. The only question to be thereafter determined was, to how much more, if any, were they entitled. That was a question for jury determination from the evidence relating to the value of the services rendered. There is an abundance of testimony in the record to support the verdict of the jury. A number of attorneys of long continued practice in their profession stated, in their opinions, in answer to a hypothetical question designed to embrace all the material facts in the case, and covering several pages of the printed record, that the plaintiffs' services were reasonably worth from $10,000 to $15,000, as variously estimated by them. In view of the services proven to have been rendered and the value of those services to the defendants, considering the value of the property involved in the litigation and the benefit derived to defendants by their being able to purchase the coal lease at the price of $4,000, after the lessee had improved it to the extent of about $53,000, we can not say the verdict was excessive. The jury, not the court, had to determine the value of the services. Defendants lost $26,000 in royalties, but they got back the unmined coal, and they also got the improvements which the lessee had put upon the property. So that the profits, derived by defendants from the litigation and by virtue of their peculiar situation which enabled them to purchase the lease for so small a fraction of its real value, must have amounted to a good many thousand dollars. After payment of plaintiffs' claim, their profits would still be large.

We do not think the jury could have possibly been misled by the testimony in relation to the value of the coal, which was estimated at $275,000. While defendants' title in fee to the coal was in no sense controverted, yet the value of the coal was in a sense involved, because the lessee had the right, under its lease, to mine and dispose of it, and, for most practical purposes, such a right amounts to a sale of the coal.

The jury were not limited to finding a verdict for $8,000 because plaintiffs had, prior to the bringing of their suit,

rendered a bill for that amount. Defendants' promise was only implied, and plaintiffs were entitled to recover upon a quantum meruit, no certain fee having been agreed on. In order to settle the matter without litigation plaintiffs may have rendered their bill in the first instance for less than what they then regarded their services as worth, and no promise having been made to pay the bill as rendered, it was no estoppel upon them. The jury had a right to find a verdict for a larger amount than $8,000, if they were satisfied from the evidence that the services were worth more than that.

The court gave three instructions for the plaintiffs and three for the defendants. These instructions, we think, fairly and fully cover the law applicable to the question with which the jury had to deal. It also refused to give a number of other instructions on behalf of the defendants, but it committed no error in refusing them. Some of them were covered by other instructions given, and some were confusing and misleading. It is not necessary to enter upon a discussion of each particular instruction. The judgment is affirmed.

*Affirmed.*