# CHARLESTON.

J. L. CHAFIN *v.* MAIN ISLAND CREEK COAL COMPANY.

Submitted January 27, 1920.    Decided February 3, 1920.

1.  BROKERS—*Agreement to Pay "Fifty-Fifty" of What is Saved if Property Can be Purchased at Less Price Than One Named Construed.*

    Where, one who is desirous of purchasing certain property, expresses a willingness to pay a certain price therefor, and agrees with another to give him "fifty-fifty" on what is saved if he can purchase the property at a less price, and through the efforts of such other party it is purchased at a less price than that named, such second party will be entitled to receive

one-half of the difference between the price at which the purchaser was willing to purchase and the price at which the property was actually secured.  (p. 463).

2.  CORPORATIONS—*Corporation Receiving Benefits Under Contract in Excess of Powers is Estopped to Set Up Defense of Ultra Vires.*

Where the rights of the public are not involved, a purely private corporation entering into a contract in excess of its powers, and receiving benefits thereunder, is estopped from setting up the defense that it was without power to make it, so far as such estoppel is necessary to do justice between the parties, unless such contract is in violation of some positive law or well settled rule of public policy.  (p. 463).

3.  SAME—*Acceptance of Benefits of Contract Made by Unauthorized Agent Constitutes Ratification.*

Where a private corporation accepts the benefits of a contract made on its behalf by an unauthorized agent it thereby ratifies the contract in its entirety and will be bound to perform the obligations provided by the contract to be performed on its part.  (p. 464).

Error to Circuit Court, Logan County.

Action by J. L. Chaffin against the Main Island Creek Coal Company.  Judgment for plaintiff, and defendant brings error.
                                                    *Affirmed.*

*E. T. England* and *Chafin & Bland,* for plaintiff in error.
*E. L. Hogsett,* for defendant in error.

RITZ, JUDGE:

The plaintiff brought this suit to recover upon a contract for services which he claims he performed for the defendant.  At the conclusion of the plaintiff's evidence a motion was made to exclude the same and direct a verdict for the defendant, which motion being overruled and the defendant electing to stand thereon, the case was submitted to the jury upon the plaintiff's evidence alone, resulting in a verdict in his favor, upon which the judgment complained of was rendered.

The plaintiff testified in his own behalf and his testimony was all that was introduced.  In so far as his evidence is material it establishes the following state of facts.  The defendant is a corporation engaged in the mining business in Logan County

and at the time of the transaction involved in this litigation John Laing was its president and a man by the name of Carson its general manager.   The Browning Land Company controlled by Sidney and Thomas Browning, owned a tract of land which the defendant's president and general manager informed plaintiff it desired to secure by purchase, as well also as another tract owned by Claude and Ray Browning.   Plaintiff remarked that the latter tract ought to be acquired for twenty to twenty-five thousand dollars and plaintiff's general manager replied "If you will buy it for that, we will give you $500.00".   On the next morning the defendant's president sent for plaintiff to come to his office.   Upon his arrival he was informed by the president that he wanted plaintiff to see the Brownings with a view to purchasing both pieces of land.   Plaintiff stated that he had no information as to what the land could be purchased for, that he did not want it understood that his remarks of the previous day were authorized by the Brownings.   Pursuant to his request plaintiff saw the owners of the Browning Land Company land and got a price of $4,700.00 on it.   He also saw Claude and Ray Browning and they made him a price of $25,000.00 on their land.   He reported this to the defendant's president and general manager and was informed by the president that the price of $4,700.00 for the Browning Land Company land was all right, but the president  desired him  to see Claude and Ray Browning again and make them an offer of twenty thousand dollars for their land.   This plaintiff did, but the offer was declined.   A counter offer was, however, made to sell at $22,-500.00.   The result of this conference was given to the defendant's president and general manager and the president advised the plaintiff to close for both pieces of land on that basis, that is $4,700.00 for the Browning Land Company tract and $22,500.00 for the Claude and Ray Browning land or $27,200.00 for both tracts.   Plaintiff advised against this and stated that he believed he could secure both tracts for $25,000.00   The general manager of the defendant in the presence of the president thereupon advised the plaintiff that if he secured the land at that price he could give him fifty-fifty on what was thereby saved from the price of $27,200.00 which the defendant's president was willing to pay.   Acting upon this the plaintiff went

back to Logan and got all four of the Brownings together and informed them that the defendant desired to purchase both tracts of land and would give $25,000.00 therefor. The Brownings did not accept this but stated that they believed that if they could see Mr. Laing, the defendant's president, he would give them the price they asked. Plaintiff says he knew from Mr. Laing that he would be in Logan that evening and he so informed the Brownings and advised them to see him personally. In the meantime he got into communication with Laing and informed him what had been done and also advised him that if he would "stand pat" on the $25,000.00 offer he was sure the Brownings would accept it. Laing came to Logan that evening and was approached by the Brownings in regard to purchasing the land. He informed them that he would give $25,000.00 for both tracts, and if they accepted he would draw a draft for the purchase money and leave it for delivery to them upon the title being passed to the defendant. The Brownings retired and after conferring over this proposition returned and accepted the same. Whereupon Laing, who was going away, drew a draft for the purchase money and arranged for its delivery to the Brownings. The land was taken over under this arrangement at the price of $25,000.00. Plaintiff claimed one-half of the difference between $25,000.00, the price at which the land was purchased and $27,200.00, the price Laing had expressed a, willingness to pay, because of the proposition of the general manager to give him fifty-fifty on the amount he saved the company. The judgment was for the amount thus claimed.

The defendant says the judgment should be reversed:

1st. Because the compensation to be paid is so indefinitely expressed, the term "fifty-fifty" not having any certain meaning, that no recovery could be had except on the *quantum meruit,* and there is no evidence upon which to base such a recovery.

2nd. Because it does not appear that the defendant had authority under its charter to make such a contract.

3rd. Because the president and general manager of the company are not shown to have been authorized to make such a contract on behalf of the defendant, and they have no such implied power.

4th.  Because it does not apear that the plaintiff was the efficient agent in securing the property at the price at which it was purchased.

We will take these propositions up in their order.  The defendant's contention is that the promise of the general manager to give plaintiff "fifty-fifty" on what was saved does not mean anything.  That this expression has a well defined meaning cannot be doubted. It conveys to the mind immediately the division of the subject of discussion into halves and we are not willing to admit that we are so ignorant of terms in common usage as not to know the meaning of this phrase.  The object of construction of contracts is to give effect to the agreement of the parties so far as it can be ascertained from the language used, and it matters not that the agreement may be expressed in the vernacular of the street.  It is clear that the court below gave the proper construction to the agreement of the parties, that is that each side would get the benefit of one-half of the difference between $27,200.00 at which Mr. Laing was willing to close and such less sum as they might succeed in purchasing the property for.

Can the defendant be allowed to say that this act is *ultra vires?*  It is a purely private corporation so far as the record shows and it does not appear that this contract would violate any principle of public policy nor does it violate any law.  It is true, there is no showing as to what corporate powers are possessed by the defendant but if it relies upon the contract being ultra vires to defeat recovery it must show that it is not within its corporate powers.  But even if it were *ultra vires,* the defendant could not set up that defense here.  It has taken the benefit of the contract and that estops it from saying that it did not have power to make it.  Where the rights of the public are not involved, a private corporation entering into a contract in excess of its powers, but which is not in violation of law or any settled rule of public policy, and receiving benefits thereunder is estopped from setting-up the defense that it was without power to make it, so far as such estoppel is necessary to do justice between the parties.  *News-Register Co.* v. *Rockingham Publishing Co.,* 118 Va. 140; *Leinkauf* v. *Lombard,* 137 N. Y. 417, 20 L. R. A. 48; *Nims* v. *Mount Hermon Boys' School,* 160 Mass. 177, 22 L. R. A. 364.

There is no evidence in this case as to the authority possessed by the defendant's president or its general manager with which officers the plaintiff's contract was made. The president of a corporation has no implied power to make such a contract as this, *Varney & Evans* v. *Lumber & Mfg. Co.,* 70 W. Va. 169, nor has the general manager any such implied power in the absence of a showing that such a contract comes within the scope of its ordinary business. *Carroll-Cross Coal Co.* v. *Abrams Creek Coal & Coke Co.,* 83 W. Va. 205, 98 S. E. 148. But the plaintiff contends that regardless of whether these officers had authority to makes the contract or not, the defendant subsequently accepted the benefit of it and having done so it is bound to perform its obligations. It is quite true that the evidence shows that the defendant took over the land under the contract procured for it by the plaintiff, and it cannot, after taking the benefit of the plaintiff's efforts in its behalf deny his right to recover the compensation agreed upon. 21 R. C. L., Title "Principal & Agent," Sec. 111; Mechem on Agency, secs. 464 and 501; *Wheeler* v. *McGuire* (Ala.) 2 L. R. A. 808; *Mayer* v. *Dean N. Y,* 5 L. R. A. 549; *Eastman* v. *Provident Mutual Life Association* (N. H.) 5 L. R. A. 712; *Great Lakes Towing Co.* v. *Mills Transportation Co.,* 83 C. C. A. 607; 155 Fed. 11, 22 L. R. A. (N. S.) 769; *Matzger v Arcade Building & Realty Co.,* 80 Wash. 401, 141 Pac. 900, L. R. A. 1915 A 288; *Despatch Line* v. *Bellamy Mfg. Co.,* 12 N. H. 205, 37 Am. Dec. 203; *Gulick* v. *Grover,* 33 N. J. L. 463, 97 Am. Dec. 728; *Meyer* v. *Morgan,* 51 Miss. 21, 24 Am. Rep. 617; *Sherrod* v. *Duffy,* 160 Mich. 488, 125 N. W. 366, 136 Am. State Rep. 451.

The only question remaining is did the plaintiff secure the property for a less sum than $27,200.00? The defendant says that it was through the efforts of its president Laing that this result was obtained. From what we have heretofore said it sufficiently appears that the plaintiff's efforts resulted in securing the property for $25,000.00. It is true that Laing cooperated with him, but surely it was contemplated that he would have the assistance of the defendant's officers in his efforts to secure the land for it at the most favorable price.

We find no error in the judgment and the same is affirmed.

*Affirmed.*