# CHARLESTON.

A. C. LAWRENCE *et al v.* MONTGOMERY GAS COMPANY *et al.*

Submitted March 8, 1921. Decided March 24, 1921.

1. CORPORATIONS—*Quorum of Directors or Stockholders in Regular Meeting After Due Notice Necessary for Legal Corporate Action.*

   Corporate action can not be lawfully expressed or made binding by less than a quorum of directors or stockholders acting jointly in a meeting thereof regularly called and after due notice as provided by law or by-law of the corporation. (p. 357).

2. ATTORNEY AND CLIENT—*Attorney Appearing and Filing Pleading Presumed to Have Authority Duly Conferred.*

   Where an attorney appears in a cause and files an answer or other pleading, being an officer of the court, he is presumed to have authority, and that what he does in relation thereto has been done with authority duly conferred. (p. 359).

3. CORPORATIONS—*Officer's Authority to Transact Ordinary Business Will Not Impose Liability on Corporation for Extraordinary Contracts.*

   The authority of the president or other officer of a corporation to transact the ordinary business of the corporation will not imply liability upon the corporation for extraordinary contracts, as the sale and disposition of a material part of its plant or other property owned and employed by it in the conduct of its business. (p. 359).

4. SAME—*One Seeking to Estop Corporation by Conduct of Officers or Agents Must Have Been Misled to His Injury.*

   To estop a corporation by its conduct from denying the authority of its officers or agents, the one seeking to enforce the estoppel must have been misled thereby to his injury. (p. 361).

Appeal from Circuit Court, Kanawha County.

Suit by A. C. Lawrence and others against the Montgomery Gas Company and others. Decree for complainants, and defendants appeal.

*Reversed and remanded.*

*L. B. O'Neal, Davis & Davis, Williams, Scott & Lovett* and *Koontz & Hurlbutt,* for appellants.

*W. E. R. Byrne, Fred O. Blue, Maynard F. Stiles* and *C. J. VanFleet,* for appellees.

MILLER, JUDGE:

On a former appeal in this cause from a decree appointing a special receiver of the property, an alleged contract which plaintiffs sought to have speifically performed, and upon questions certified to us by the circuit court on the sufficiency of defendants' answers, exceptions to which were interposed by plaintiffs, we were of opinion, on the prima facia case then presented, to affirm the decree below appointing the special receiver and to remand the cause for further proceedings. 84 W. Va. 382, 99 S. E. 496.

The bases of our former decision, as will appear from the opinion then delivered and the mandate therewith certified to the circuit court, was that although the answers denied the authority of the officers and directors of the defendant company to enter into the contract in writing with plaintiffs and to execute and deliver in escrow a deed to them for the property sued for, the same being signed, acknowledged and sealed by and on behalf of defendant company by Henderson, its president, swearing that he was thereunto duly authorized, the burden was thereby cast upon the Montgomery Gas Company, regardless of its denial of want of authority of its officers and directors in the premises, to prove such want of authority.

The present appeal is by the Montgomery Gas Company, the Columbian Carbon Company, a subsequent purchaser of the property, and O. J. Henderson and some thirty-eight others, officers, directors and stockholders of the Montgomery Gas Company, from a decree below pronounced on July 20, 1920, specifically executing said contract and setting aside the subsequent deed for the property to the Columbian Carbon Company, pronounced upon full hearing upon bill, answers, replications, and depositions and proofs taken, the evidence principally relating to the main issue of alleged want of authority of the officers and directors who undertook to enter into said contract of sale and to execute and de-

liver said deed, and also upon the theory of an alleged hold-
ing out by said company of its officers and directors as being
clothed with such authority estopping them from denying
the same.

While the result of our former decision was to place the
burden upon the defendants to show want of authority in
the officers and directors in the premises, we now perceive
that the fact of such lack of authority for want of corporate
action being established, the burden would be recast upon
plaintiffs to show such holding out or ratification of the un-
authorized act as would bind and conclude the principal.

The facts and circumstances attending the entering into
said contract and the execution, whether or not, strictly
speaking, in escrow of the deed, and what occurred subse-
quently, with slight colorings in their favor, not affecting
the merits of the case, are very clearly stated by appellants'
counsel as follows:

"On July 5, 1918, Kennedy appeared in the town of Mont-
gomery and proposed to O. J. Henderson, H. Lane, J. F.
Burgess and D. C. Smallridge, four of the nine members of
the board, to buy from the company the Burke lot and well
for Twenty Thousand ($20,000) Dollars. The board was
not in session and was not convened, but as a result of this
negotiation, and on the evening of the 25th of July, a writ-
ten contract was prepared and signed by these four gentle-
men in the name of the Montgomery Gas Company (but not
under corporate seal), whereby the Montgomery Gas Com-
pany agreed to sell Lawrence and Kennedy the Burke lot
and well for $20,000, $10,000 to be paid on the signing and
delivery of the proper deed, and $10,000 within sixty (60)
days thereafter, with interest, to be secured by endorsement
approved by seller, this contract providing that the deed was
to be delivered as soon as could be prepared. To this con-
tract they affixed the name of the Montgomery Gas Company
by O. J. Henderson, Pres., D. C. Smallridge, Secy-Treas.
and director, by H. Lane, director, and by J. F. Burgess,
director. On the following morning, Kennedy having re-
mained in Montgomery, there still having been no meeting

of the board called or held, the signature of S. S. Wallace, a director, was added, Wallace not being present when any of the others signed, and only one of the parties who had already signed, viz: H. Lane, being present when Wallace signed, in the store of Lane. Kennedy, at the time of nego- tiating the contract, stated that the money was on deposit in Kanawha Valley Bank and would be paid as soon as the deed was presented. This was proven by defendants and Kennedy did not testify.

"During the day of July 26, Henderson procured to be drawn a deed, by which the Montgomery Gas Company pur- ported to convey the Burke lot and well to the plaintiffs, and the seal of the company was attached to the deed; it was ac- knowledged by Henderson in form required of corporations, and Henderson, on the following day, July 27th, brought the deed to Charleston to the Kanawha Valley Bank, to which place plaintiffs had directed him to come with the deed and receive the consideration, the cash and note. No arrange- ments had been made at the bank for the payment of the money or the receipt of the deed, and Henderson went to the office of plaintiff Lawrence, where Lawrence examined the deed, with his attorney, approved it and requested Hen- derson to meet him at said bank in the afternoon of that day. At the appointed hour Henderson went to the bank, where he found the money had not been deposited. Later on the same day Lawrence and Henderson went together to the bank, and finding its cashier not there, Lawrence told Hen- derson that immediately upon the return of the cashier the money would be deposited. Henderson left the deed with the bank with directions to the latter to collect the $10,000 and note as called for and deliver the deed, Lawrence prom- ising immediate payment of the money and assuring that it had been arranged for. Henderson then left the city. The plaintiffs did not make the cash payment or execute the note on July 27th, as they had agreed to do, (July 28th being Sunday), or on July 29th.

"On July 30, 1918, Henderson, Lane, Burgess and Small- ridge in Montgomery, learning by 'phone from Kanawha

88 W. Va.

Valley Bank that the deed had not been taken up, called in
L. Burke O'Neal, an attorney, and directed him to send to
plaintiffs a letter advising them that the contract of July
25th was canceled and the deed withdrawn, since the same
was to have been an immediate one, was not a time option,
and time was of the essence thereof, and the plaintiffs had
wholly refused to comply on their part by passing the con-
sideration and taking up the deed at the time and in the man-
ner agreed upon.  This action, like all prior acts of these
four gentlemen touching the purported sale to plaintiffs, was
taken by them as individuals, no meeting of the board having
been held.  On the morning of July 30th, about 10:30 or
11:00 o'clock, immediately after Henderson notified the bank
not to deliver the deed, Henderson sought to get Lawrence
by telephone to give him personal notice, and, though un-
able to get either Lawrence or Kennedy in person, got and
talked with C. J. Van Fleet, the attorney for the plaintiffs
in this transaction, owner of an interest in the claim set up
by Lawrence and Kennedy in this suit, and who occupied an
adjoining and connecting office to that of plaintiff Lawrence,
and advised his attorney that the contract was canceled and
requested him to notify the plaintiffs.  On July 30th, after
the O'Neal letter had been dispatched, some stockholders of
the company who lived in Montgomery discussed the matter
of drilling the Burke well, and at their request a meeting
of the board of directors was called for the following day,
July 31st, at which these gentlemen intended to propose that
the company itself drill the well.  H. Lane, one of the di-
rectors, began to make inquiries where derricks and machin-
ery for drilling could be found and called on the telephone,
amony others, the office of the Columbian Carbon Company
in Charleston.  J. D. Pribble, superintendent of the Colum-
bian Carbon Company, after replying to Lane's inquiries as
to derricks, said to Lane that he would like to make an offer
for the purchase of the Burke lot by his company, the Colum-
bian Carbon Company.  Lane replied that his company was
to have a meeting next morning and that he thought they
would decide to drill the well.  Pribble suggested that he

would like to submit a proposition to the company, and Lane replied in effect that it would probably be useless, but that a directors' meeting was being held in the morning of the following day, at which Pribble, if he saw fit, could appear.

"This meeting of the board convened on July 31st, for the purpose of considering drilling to the oil bearing sand the Burke well. Prior to this meeting all members of the board knew of the Lawrence contract. While in session Pribble appeared, was accorded a hearing, and proposed to pay for his company Thirty-Five Thousand ($35,000) Dollars for the lot and well, provided the stockholders of the company should assent. Thereupon the directors at that meeting agreed to accept this offer, subject to the approval of the stockholders, and directed a meeting of the stockholders to be called for and held on the 10th day of August, 1918. On August 10th, the stockholders assembled in meeting. There were present 100,848 shares. A resolution was introduced, which recited the proposition of the Columbian Carbon Company, the said action of the board thereon on July 31st, the institution of this suit by Lawrence and Kennedy to enforce the contract claimed by them, the immediate necessity of drilling lest the oil be drained by wells on adjoining property, authorized and directed the sale to Columbian Carbon Company at $35,000.00, and that this suit be actively defended and the claim of the plaintiffs resisted, and provided that the Columbian Carbon Company should, with dispatch, drill for and save the oil on the lot, and otherwise arranging the details of the sale to the Columbian Carbon Company and the payment by the Columbian Carbon Company of the purchase price when the suit should have been determined. "This resolution was adopted by a vote of all the shares present except 8300." The total stock outstanding at the time was 150,000 shares.

The evidence establishing these facts is quite sufficient to show that no corporate action by directors or stockholders preceded the making of the contract to Lawrence and Kennedy.

The law is well settled in this state as elsewhere that cor-

porate action can not be lawfully expressed or made binding by less than a quorum of the directors or stockholders acting jointly in a meeting thereof regularly called after due notice as provided by law or by-law. Indeed this is the proper interpretation or construction of our statute, section 51 of chapter 53 of the Code, as shown by repeated decisions of this court. In *Limer* v. *Traders Co.*, 44 W. Va. 175, we held, third point of the syllabus, that the directors of a corporation can not separately and individually give consent to or make a contract to bind the corporation; they can act only as a body, their power being not joint and several, but only joint. And as said in 3 Thompson on Corporations, § 3906, cited and quoted in our case just referred to, "When they (the directors) are not consulting together as a board, they are regarded as acting privately and unofficially." The rule just stated was affirmed in our cases of *Pennsylvania Lightning-Rod Company* v. *Board of Education,* 20 W. Va. 360, and *Smith* v. *Cornelius,* 41 W. Va. 59, 68, and subsequently recognized also in *Griffth* v. *Blackwater Boom & Lumber Company,* 46 W. Va. 56, 64, and *Cunningham* v. *Board of Education,* 53 W. Va. 318, 320. There is no need of elaboration of this proposition by further reference to the authorities.

It is not contended on this hearing that the individual directors who undertook to sign and execute the contract and deed involved here did so pursuant to any authority of the board of directors thus given. The propositions now relied on are: First, that after learning of the action of these directors, the corporation through its constituted authority was not prompt to repudiate the contract; Second, that there was such a holding out by the corporation and board of directors and stockholders of such plenary power and authority by a course of dealing as to estop them from denying authority of the officers and directors who undertook to act in this instance.

On the first proposition, we have the fact that the officers and directors who undertook to make the contract with plaintiffs did, through O'Neal, attorney, promptly notify plaintiffs that because of their failure to comply with the contract, as

they interpreted it, it was canceled. It is true, this notice was not put upon the ground of lack of authority, but as their action in the first instance was not taken pursuant to authority of the directors, such notice could hardly be said to be any recognition of the authority assumed by them, by the directors in meeting. But when the directors did meet the following day, they in effect repudiated the contract with plaintiffs by ignoring it and entering into the contract with the Columbian Carbon Company, subject to the approval of the stockholders in a meeting called at the same session, to convene on August 10th following, the earliest day such meeting could be convened; and when the stockholders did meet, they were prompt to repudiate the prior action of the officers and directors who had undertaken to act in the premises, and authorized this suit to be vigorously defended.

Moreover, in the answer of the defendant company to the bill, under the seal of the corporation, and sworn to by Henderson, President, filed on August 7th, and signed by counsel, want of authority of these officers was distinctly alleged. True, it is said these officers undertook in good faith to carry out said contract, but their authority was denied; and it was denied that their action was at any time or in any manner ratified or approved by the corporation; and these facts are fully established by the evidence. Besides, the answer of defendants, signed by counsel, which we must assume was made with corporate authority, was of itself prompt repudiation of the contract and deed. Where an attorney institutes a suit or appears in defense of a suit brought against his client, being an officer of the court, he is presumed to have authority, and that what he does is on behalf of his client with authority duly given. *Low* v. *Settle*, 22 W. Va. 387; *Fisher* v. *March*, 26 Gratt. 765; *Marling* v. *Robrecht*, 13 W. Va. 440; *McGinnis* v. *Curry, Id.* 29; *County Court* v. *Duty*, 77 W. Va. 17; *Marshall* v. *McDermitt*, 79 W. Va. 245.

On the second proposition relied on, that of a holding out of the officers and directors entering into the contract in this case, there is not a particle of evidence of such conduct as would preclude or estop the defendants. Indeed, the plain-

tiffs do not claim that they were induced to deal with the president and directors who undertook to sell them the Burke well by any previous conduct on the part of the corporation. On the contrary the record shows that one of the plaintiffs, A. C. Lawrence, since the institution of this suit visited Montgomery, where the offices of the company are located, in search of evidence of such holding out to others, and found none, at least none which they were induced to offer in support of their present contention. They also appeal to the minutes of the directors and stockholders. These appear to have been very irregularly kept prior to the year 1915; after that time all important business of the company seems to have been transacted by the board of directors; and certainly the minutes do not show any recognition of authority of indvidual officers or directors to sell or dispose of the corporate property without authority of directors or stockholders. A particular instance relied on is that of a contract with the Virginian Power Company for a large quantity of gas; but the company was engaged in supplying the public with gas, and right to make sale thereof by the managing officers might be implied; but the fact is that there was a minute of authority of the officers to sell the surplus gas sold to the power company, but not to that company, the officers electing to do so, however, because of the better price thus obtained. Because of the ratification of this contract, however, not known to plaintiffs, it can not be said that they were misled thereby, nor will one ratification of an unauthorized act conclude the principal from repudiating another. Our decisions say that authority of the president or other officer to transact the ordinary business of the corporation will not impose liability on the corporation for extraordinary contracts made by them, involving expenditure of large sums of money for supplies or machinery, or the disposition of its plant or property, not implied by the nature of the business. *Varney and Evans* v. *Hutchinson Lumber & Manufacturing Co.*, 70 W. Va. 169. And to be binding as a ratification of the unauthorized act of an officer or other agent of a corporation, the board of directors must not have been ignorant of

the facts in relation thereto.   *Flanagan* v. *Flangan Coal Co.*, 77 W. Va. 757.

It is a cardinal rule of the law of estoppel by conduct or holding out, applicable alike to corporations and individuals, that the one seeking to enforce the estoppel must have been misled by such conduct or action to his injury, else he can not rely thereon.   *Koontz* v. *Mylius*, 77 W. Va. 499; 16 Cyc. Law & Proc. 744, 745, 746.

For the foregoing reasons we are of opinion to reverse the decree below, and to remand the cause with directions to restore the property now in the hands of the special receiver to the Columbian Carbon Company, to discharge the special receiver, settle his accounts, and upon such settlement to distribute the money in his hands to the persons entitled thereto; and the appellants will recover of A. C. Lawrence and W. A. Kennedy, appellees, the costs incurred by them upon this appeal, as well as those incurred by them in the circuit court in their defense therein.

*Reversed and remanded.*