MEDLEY C. MAGRUDER

*v.*

HAGEN-RATCLIFF & COMPANY

(No. 10008)

Submitted September 14, 1948. Decided October 26, 1948.

*Peyton & Winters* and *T. W. Peyton,* and *Thomas Burchett* and *S. S. Willis,* for plaintiff in error.

*Marcum & Gibson* and *Philip P. Gibson,* and *A. W. Mann,* for defendant in error.

LOVINS, JUDGE:

This action in assumpsit was brought by Medley C. Magruder in the Circuit Court of Cabell County, West Virginia, to recover from the defendant, Hagen-Ratcliff & Company, a corporation, the amount allegedly due plaintiff as the winner of a contest between defendant's salesmen.

Plaintiff was employed by the defendant as a travelling salesman, his average weekly earnings being about seventy-five dollars. Defendant was one of several affiliated corporations, all of which were engaged in selling groceries at wholesale.

Sometime in September and October of 1943, the president of the corporation which owned the various affiliated corporations, conceived the plan of a series of contests to be held among employees of the various affiliated corporations. The plan of the contests was for the manager, the salesmen, the bookkeeper, and the warehouse foreman of each of the affiliates to compete with the men holding similar positions in the other affiliate corporations. However, it is admitted that because the defendant operated on a credit and delivery basis, while the other affiliates operated only on a cash and carry basis, a separate contest was to be conducted among the salesmen of defendant whereby they competed only against each other, rather than competing as a group against the salesmen of each of the other affiliates.

Although the approval of the contest was never obtained from the board of directors of defendant corporation, the president of defendant, who was also president of the owner corporation, testified that about November 1, 1943, he let it be known among the employees of the

various corporations that contests would be conducted during the months of November and December, 1943, but that details thereof were withheld until a general meeting of the employees of the corporations affected, to be held on November 20, 1943. At that meeting rules and regulations governing the contests were circulated to the managers of the various affiliates. According to defendant's president, these rules, though dated November 20, 1943, had been drawn up several weeks earlier. Provided therein was the following: "The salesman of Hagen, Ratcliff & Co. whose sales * * * result in the largest profit to the organization will be declared the winner and the award will be a one-week's all expense paid vacation for winner and wife * * *."

Defendant's president also testified that "Supplementary Contest Rules" were circulated among the managers about the same time, whereby the maximum schedule of awards was fixed. The schedule therein limited salesmen to an award of one hundred fifty dollars per couple. This schedule was admitted in evidence on the condition that later evidence show that its contents were communicated to plaintiff. The evidence does not satisfactorily show that plaintiff was advised of the contents of the "Supplementary Contest Rules", and plaintiff denies ever having seen either the rules dated November 20, 1943, or the said supplementary rules of the contest. Thereafter the record discloses statements by the judge of the trial court indicating his intention to strike the "Supplementary Contest Rules" from the evidence. Nevertheless, other evidence discloses an intention of defendant's president to limit the award to one hundred fifty dollars, and, though no avowal of the record was made respecting it, "Supplementary Contest Rules" appear as an exhibit therein.

According to the testimony of the witness Rist, who at the time of the contest was the manager of the defendant, hereinafter referred to as "manager", and several of defendant's salesmen, a meeting or meetings were held in October, 1943, wherein discussions of the contests were the principal topics. In these meetings defendant's presi-

dent and the publicity director of the owning corporation announced that the salesmen of the defendant corporation would be guided by a set of rules, different from those regulating the other contests, whereby the defendant's salesman who sold the most goods, made the best collections, and kept his ration stamp account in the best condition would be declared the winner, the "manager" being the sole judge as to these matters. The "manager" further testified that he was directed by the president to announce that the award for the Hagen-Ratcliff & Company salesmen's contest would be a two-weeks', all-expense paid vacation with pay for the winner and his wife. The "manager" further stated that the circular containing the rules and regulations of the contests, circulated November 20, 1943, was but one of many different circulars received by him before and during the contest, but that at different times during the contest the president of defendant corporation had reaffirmed to him the special rules and award governing the special contest among the salesmen of defendant corporation as disclosed in the October, 1943, meeting.

The plaintiff, having participated in the contest, was declared the winner by the "manager", and was publicly introduced as such at a banquet held for the employees of all the affiliates in January, 1944. Thereafter, plaintiff requested a cash award, equal to the cost but in lieu of the vacation, which request was refused. In refusing, however, defendant's president admits he urged plaintiff to take the vacation, rendering the company a bill therefor not to exceed one hundred fifty dollars. After further negotiations, this action was instituted, alleging damages in the amount of twenty-five hundred dollars.

So far as the record before this Court discloses, defendant filed two special pleas to the plaintiff's declaration, in addition to its plea of the general issue. The first, designated "Special Plea No. 1", alleged that the contract on which the action is based violated "* * * Executive Order No. 9250 and amendments thereof, issued by the President of the United States under and by virtue of the authority

vested in him by the constitution and statutes, and particularly by act of October 2, 1942, entitled 'An Act to Amend the Emergency Price Control Act of 1942, to Aid in Preventing Inflation and for Other Purposes,' which Executive Order is sometimes known as the Wage and Salary Stabilization Policy * * *". Plaintiff's demurrer to this plea was sustained by the trial court.

The second plea was designated "Plea of Tender and Payment into Court". By this plea, defendant alleged it was willing to pay one hundred fifty dollars to the winner of the aforesaid contest, but that it was unable to determine if it was authorized to do so by reason of said Executive Order No. 9250, as amended; and that it was also unable to determine whether plaintiff or Frank Estep, who was also a contestant and "probable winner", was entitled to receive said sum of one hundred fifty dollars. The plea thereafter alleges that the sum of one hundred fifty dollars is thereupon paid into court, and asks that said Frank Estep be summoned "to ascertain what rights, if any, he may have to said sum."

A demurrer and motion for more particulars having been overruled as to the second plea described above, the trial court ordered Frank Estep to appear before it and "* * * state the nature of his claim and maintain or relinguish it herein." On the date set for the trial below, Frank Estep having failed to appear though previously served with a copy of the court's order so directing him, the trial court held that plaintiff was entitled to recover the sum of one hundred fifty dollars paid into court with the second plea above described. Thereupon defendant moved the trial court for leave to withdraw its plea of tender and payment into court, which motion was overruled. The trial court then caused a jury to be impanelled to determine the "sole question of the amount the plaintiff is entitled to recover over and above One Hundred and Fifty ($150.00) Dollars paid into Court." After hearing the evidence and the instructions of the court, the jury returned a verdict for plaintiff in the amount of six hundred seventy-five dollars. Thereafter, defendant's motion

to set aside the verdict and award it a new trial having been overruled, the court rendered judgment for the plaintiff on the verdict, as well as for the amount tendered into court.

During the course of the trial below, defendant offered evidence which would have shown that Frank Estep was the salesman of the defendant corporation whose sales resulted "in the largest profit to the organization". This evidence was rejected by the trial court. Also during the course of plaintiff's testimony, plaintiff was asked to estimate the costs of a two-weeks' vacation to Palm Beach, Florida. The court overruled an objection which was made on the ground that plaintiff was not qualified to make such an estimate. Thereafter plaintiff testified at length as to the various items making up his estimate, which was $721.38. No further objections were raised thereto, nor was any motion made to strike such evidence from the record.

In prosecuting its writ of error to this Court, defendant has made numerous assignments of error, each of which is based upon separate rulings of the trial court on the various pleadings, on the admission of evidence and on the instructions. However, we believe that a summary of the various assignments of error gives rise to five questions for decision herein: (1) What effect, if any, does Executive Order No. 9250, as amended, have upon the alleged contract on which this action is based; (2) defendant having entered a plea of tender and payment into court, was it error, in the circumstances of this case, to refuse leave to withdraw such plea and to restrict the issue before the jury to the sole question of damages; (3) is the verdict of the jury sustained by proper evidence; (4) did the trial court properly exclude certain evidence offered by defendant; and (5) did the trial court properly instruct the jury on the issues to be determined by it?

The first question presented by this record challenges the action of the trial court in sustaining the demurrer to defendant's "Special Plea No. 1". We pause to observe

that it was unnecessary to plead specially the Executive Order, the statute, and the rules and regulations issued pursuant thereto. Code, 57-1-4. See *Brown, et al. v. Coal & Coke Co.*, 94 W. Va. 287, 118 S. E. 284; *Spring* v. *Tel. & Tel. Co.*, 86 W. Va. 192, 103 S. E. 206. We think that any illegality involved in the contract here sued on could have been shown under defendant's plea of the general issue. See 4 Minor's Institutes, 3d Ed. 774; Kittle, Modern Law of Assumpsit, Section 364; *Morgantown Bank* v. *Foster*, 35 W. Va. 357, 363, et seq., 13 S. E. 996. Therefore, it was not prejudicial error for the trial court to reject "Special Plea No. 1". *Bennett* v. *Perkins*, 47 W. Va. 425, 35 S. E. 8.

Nevertheless, the same questions being raised by the plea of the general issue as were sought to be raised by "Special Plea No. 1", we must consider whether the federal statute above mentioned, the executive order, with the amendments thereto, and the rules and regulations promulgated by the governmental agency set up to administer the same render the contract illegal and unenforcible. We treat the trial court's action in restricting the issues before the jury, in admitting evidence, in instructing the jury, and in rendering judgment on the verdict, equivalent to a holding that said statute, executive order, and rules and regulations did not render the contract illegal and unenforcible.

A question similar to the one here presented was discussed in the case of *Nussenbaum* v. *Chambers & Chambers* (Mass.), 77 N. E. 2d 780. It was there reasoned that a contract to increase salaries and wages was not illegal, if the same "might be approved by the proper Federal authority before the time agreed upon for actual payment." It was further held in the *Nussenbaum* case: "Many contracts cannot lawfully be performed without securing a permit, license or approval from some governmental officer or board, and yet the contracts are not deemed illegal. Professor Williston says, 'The fact that a party bargains to do an act which will be illegal unless governmental permission is obtained does not make such

bargain illegal, and if he does not obtain such permission he is responsible in damages for failure to perform.' Williston on Contracts (Rev. Ed.), §1767, note 3." It may be properly inferred from the pleadings and evidence herein that no effort was made by defendant to secure the approval or disapproval of the contract from the proper governmental agency. The burden of establishing the illegality of the contract by reason of the applicability of the federal statute, the presidential executive order, with amendments, and the rules and regulations promulgated thereunder, rests upon defendant herein. *Nussenbaum* v. *Chambers & Chambers, supra; Kalina* v. *Gary Jr., Inc.*, 55 N. Y. S. 2d 757. See *Leick* v. *Missouri Plating Co.* (Mo. App.), 211 S. W. 2d 77; *Thacker* v. *American Foundry* (Cal. App.), 177 P. 2d 322.

Not only has defendant failed so to establish the illegality of the contract, 'but it will be observed that the rulings and regulations adopted by the governmental agency administering the federal act, the executive order, and the amendments thereto, probably exclude a contract, such as here considered, from the operation thereof. See Executive Order No. 9328, 50 U. S. C. A., page 318 *et seq.;* Prentiss-Hall Labor Equipment, Vol. 1, Wage and Hour, paragraphs 18,251, 18,371, and 18,374.

In this case no permanent wage or salary increases were contemplated, and, so far as this record shows, the money to be paid to the contestants in the competition was not made the basis for increasing the prices of groceries sold by defendant. The federal act, the presidential executive order, and the action of the governmental agency administering the same, were not directed toward contracts and agreements such as disclosed by this record. Accordingly, we hold that Executive Order No. 9250, as amended, has no effect upon the alleged contract on which the action is based.

On the day of the trial, both before and after the evidence was taken, defendant moved the court for leave to withdraw its "Plea of Tender and Payment into Court",

which motions were overruled. An examination of this plea discloses that it is really a plea of interpleader, defendant being willing to pay either to plaintiff or to Frank Estep the sum of one hundred fifty dollars. We think the defendant effectively adopted the position that it owed one hundred fifty dollars either to Magruder or Estep. Having taken that position, and Estep having been served with process and having failed to appear and sustain or relinguish his claim, Magruder was not required to show any fact or facts to entitle him to judgment for the one hundred fifty dollars tendered by the plea. *Newman* v. *Levi*, 74 W. Va. 223, 81 S. E. 1036.

It occurs to us that defendant has attempted to adopt inconsistent positions by its plea of tender and payment into court, and by a subsequent motion for leave to withdraw the plea of tender. We think that, defendant having once admitted indebtedness either to Magruder or Estep, plaintiff, in the circumstances here shown, would be prejudiced by a change in position on the part of defendant. See *Ennis* v. *Brawley*, 129 W. Va. 621, 41 S. E. 2d 680; Burke's Pleading and Practice, 3d Ed., Section 206; 26 R. C. L., Tender, Section 32. There was no error in the court's refusal to grant leave to withdraw the plea of tender. For similar reasons, we see no error in the trial court's refusal to admit evidence offered by defendant calculated to prove that a person other than plaintiff was the winner of the contest.

Of course, plaintiff was required to prove by a preponderance of the evidence that his damages exceeded the amount tendered, and the question now arises whether the verdict is sustained by proper evidence. Plaintiff showed by testimony of the "manager", as well as by the testimony of himself and other employees of defendant, that the contest among the salesmen of Hagen-Ratcliff & Company was confined to that company, the salesmen thereof competing only against each other; and that the salesman who sold the most goods and collected the most money and kept his ration stamp account in the best condition, would be declared the winner; that the "manager"

would be the sole judge of such winner; and that the award to the winner would be a two-weeks', all-expenses paid vacation for the winner and his wife, with average commissions. It is further shown that in January, 1944, in the presence of an assembly of employees of defendant and the affiliated companies, plaintiff was declared the winner of the contest. It is conceded that the contest started on or about November 1, 1943, and plaintiff's witnesses testified that the rules thereof were related to them by defendant's president and the "manager" prior to November 1, 1943.

Notwithstanding this testimony, defendant attempted to show by a bulletin issued by it about November 20, 1943, that the contest was to be judged on the basis of the salesman who made the most profit for defendant; and that there would be a one-week's, all-expenses paid vacation for the winner and his wife. By supplementary contest rules, defendant attempted to show that the amount for one week's vacation was limited to one hundred fifty dollars per couple.

As above stated, it is not clear whether the supplementary contest rules were admitted for consideration by the jury. But in view of the fact that the bulletin containing the supplementary rules presumably was issued after the commencement of the contest, we think there must have been a change in the rules after the contest had started, and, there being positive evidence that plaintiff received no notice of such change, the change was not binding as to him. *Long* v. *Chronicle Pub. Co.* (Cal. App.), 228 P. 873. A contest such as the one shown in this case arises from an offer·made by a person desiring to enlist contestants, and when accepted by substantial compliance with the terms as offered, an enforcible contract is created. *Scott* v. *People's Monthly Co.* (Iowa), 228 N. W. 263. Undoubtedly, there could not have been such a wide variance as to the terms of the contest and the amount to be paid the winner as exhibited by the oral testimony, unless there was a change. According to the clear preponderance of the evidence in this case, plaintiff substantially complied with

the terms of the offer made by defendant, and should be awarded the prize promised.

The right of plaintiff to estimate the amount of the cost of a two-weeks' vacation is challenged by defendant. As stated above, an examination of the record shows that the only objection made to plaintiff's testimony in estimating the cost of the two-weeks' vacation was embodied in a statement by counsel for defendant that he thought the witness was not qualified to state what such a trip as was contemplated by plaintiff would cost. No further objections were made, even though plaintiff testified at length as to the various items making up his estimate. It appears that the testimony as to some of the items was unobjectionable but as to other of the items was subject to objection on the ground of hearsay. "If incompetent or hearsay evidence is admitted without objection thereto, the jury may properly consider it as evidence in the case." *Gutshall* v. *Hamilton* (Va.), 114 S. E. 595, 597. See *State* v. *Taylor,* 130 W. Va. 74, 42 S. E. 2d 549, as to the effect of a general objection to evidence.

Defendant makes a point of the fact that no corporate action was shown authorizing the contest between the employees of defendant. There are numerous authorities in this jurisdiction which hold that there is no inherent power in the president of a corporation to make contracts in its behalf. *Varney & Evans* v. *Lumber Co.,* 70 W. Va. 169, 73 S. E. 321; *Flanagan* v. *Coal Company,* 77 W. Va. 757, 88 S. E. 397; *Wagon Co.* v. *Mfg. Co.,* 102 W. Va. 16, 135 S. E. 242. Especially is this true where the contract is an unusual contract or relates to transactions not constituting the usual business of the corporation. *Lawrence* v. *Gas Company,* 88 W. Va. 352, 106 S. E. 890; *Stewart* v. *Steel Corp.,* 100 W. Va. 331, 130 S. E. 447. The same principle applies to the general manager of a corporation. *Napier* v. *Coal Company,* 86 W. Va. 220, 103 S. E. 125; *Pedicord* v. *Mining Co.,* 110 W. Va. 116, 157 S. E. 89; *Beall* v. *Railroad Co.,* 116 W. Va. 515, 182 S. E. 295.

But, "Where a private corporation accepts the benefits of a contract made on its behalf by an unauthorized agent

it thereby ratifies the contract in its entirety and will be bound to perform the obligations provided by the contract to be performed on its part." *Chafin* v. *Coal Company,* 85 W. Va. 459, 102 S. E. 291.

In this case defendant was engaged in the business of selling groceries at wholesale. In order to stimulate those sales and to increase the morale of its employees, the contest was originated. Such activities were, or course, within the usual business of defendant, and it accepted the benefits so derived from the contest.

Furthermore, we think that defendant in pleading tender as to one hundred fifty dollars, adopts an inconsistent position by offering the testimony of its president that he had no authority from the board of directors to offer any sum as a prize for the contest. Defendant, in effect, pleaded that the corporation was liable to the extent of the amount tendered, notwithstanding lack of the president's authority. Therefore, we believe that defendant has ratified the contract here sued on and is estopped from setting up lack of corporate authority in this action. Likewise, the trial court properly refused to admit evidence tending to show lack of corporate authority to conduct the contest.

A careful examination of the record herein discloses that the trial court committed no prejudicial error in admitting and rejecting evidence tendered by plaintiff and defendant. From what has been said, it follows that the verdict is sustained by proper evidence.

Plaintiff's instruction No. 2, in substance, instructed the jury that if a preponderance of the evidence showed that defendant made an offer to its several salesmen and that the salesmen, pursuant to such offer, relied and acted thereon, and that thereafter defendant declared plaintiff to be the winner of said contest, that the offer by the defendant and acceptance by performance of the plaintiff constitute a valid and binding contract between plaintiff and defendant, and that defendant could not lawfully alter or change the terms of the contract to the disadvantage of the plaintiff. This instruction is a correct state-

ment of the applicable law, and the giving thereof was not error.

The refusal of defendant's instruction No. 1, which was peremptory, was proper. It suffices to say that the trial court's refusal of defendant's instructions Nos. 3 and 4 was not prejudicial error, for the reason that material parts of said instructions were predicated upon factual theories contrary to the plea of tender and payment into court.

Upon the whole record, we find no prejudicial error. Therefore the judgment of the Circuit Court of Cabell County is affirmed.

*Affirmed.*