BOSS ET AL., LIQUIDATING TRUSTEES, v. THE ALMS & DOEPKE CO.

*Bills of exceptions—Limitation for filing in Court of Appeals—Section 11564, General Code—Overruling of motion for new trial or entry of judgment—Corporations—Contracts to purchase realty—Vice-president not authorized to bind corporation, when.*

1. A bill of exceptions is filed as required by Section 11564, General Code, and properly before this court for consideration, when filed within forty days of the overruling of the motion for a new trial, although the final entry giving judgment for defendant was not made until after the bill of exceptions was filed.

2. The power of an Ohio corporation to acquire real estate being vested by statute in the board of directors, the vice-president of a corporation, as its agent, has no authority to bind the company with a contract to purchase realty, being a transaction of considerable magnitude and not in the usual or ordinary course of a mercantile business, unless such authority is delegated either expressly by action of the board of directors or by such a course of conduct or dealing with the world as would clearly imply authority in the agent.

(Decided February 5, 1923.)

ERROR: Court of Appeals for Hamilton county.

*Messrs. Worthington, Strong, Stettinius & Hollister,* for plaintiffs in error.

*Messrs. Maxwell & Ramsey; Mr. Jos. S. Graydon* and *Mr. John C. Hermann,* for defendant in error.

BUCHWALTER, J. The plaintiffs in error, plaintiffs below, as the liquidating trustees of the Gambrinus Stock Company, brought an action against

the Alms & Doepke Company to recover damages for alleged breach of a contract for the purchase of real estate.

Both companies are corporations under the laws of Ohio.

The Alms & Doepke Company answered denying that the contract was that of the company, and by cross-petition asked for the repayment to it of one thousand dollars, claimed to have been illegally paid on account.

By reply, denial of the illegality of the payment was made.

A jury having been waived, the cause was tried to the court, which gave judgment for the defendant, on all issues joined. To reverse this judgment, error is prosecuted here.

It is contended by defendant in error that the errors complained of are not properly before this court for review, because the bill of exceptions was not filed as required by statute.

The cause was submitted on June 17, 1921.

August 11, 1921, the court filed a written opinion in favor of defendant.

On August 12, 1921, plaintiff filed a motion for a new trial.

November 12, 1921, the court filed another written opinion, adhering to the views expressed in the former opinion.

December 19, 1921, the bill of exceptions was filed, allowed and signed, by consent of the defendant's attorneys. The final entry, however, giving judgment for defendant, was not made until December 28, 1921. The court, in its certificate at the end of the bill of exceptions, states:

"And thereupon, afterwards, and within three

days, counsel for plaintiff filed a written motion to set aside said decision, order, and finding, and for a new trial, which motion the court overruled, to which action of the court counsel for plaintiff then and there duly excepted."

And with reference to the filing of the bill of exceptions, the court said:

"And being within forty days of the overruling of the motion for a new trial."

The defendant, by counsel, consented, in writing, to immediate transmission and allowance of the bill of exceptions, and waived objections thereto. It is now claimed that the bill of exceptions is improper, because the final entry was not made until December 28, and the case of *Toledo & Ohio Central Ry. Co.* v. *Marsh*, 17 C. C., 379, is relied on. That case was decided when the statute provided that a bill of exceptions should be presented for allowance "within fifty days after the overruling of the motion for a new trial, or the decision of the court, where a motion for a new trial is not necessary."

The provision of the Code referring to bills of exceptions was changed in 1904, and is now Section 11564, General Code, and the present provision as to the filing of a bill of exceptions is:

"Not later than forty days after the overruling of the motion for a new trial, or the decision of the court, when the motion for a new trial is not filed."

This provides for the expiration of the time allowed for filing, and this bill was filed prior to such expiration period.

Our conclusion is that the bill of exceptions is properly before us. It will be considered on all matters raised by the petition in error.

The only questions presented are:

First: Was the contract in fact the contract of the Alms & Doepke Company?

Second: If a valid contract, what is the measure of damage?

Third: Errors in the admission and rejection of evidence.

On January 3, 1920, the Gambrinus Stock Company, the owner of a leasehold estate and also of some real estate in fee simple, entered into a contract for the sale of said realty, which contract was signed by the Gambrinus Stock Company, by its proper officers, and also signed, the Alms & Doepke Company, Wm. L. Doepke, Vice-President, which contract purported to sell to the Alms & Doepke Company the said real estate for the sum of $75,000, and a check of the Alms & Doepke Company for $1,000, signed by said Doepke, as Vice-President, was given on account of the purchase price.

February 11, 1920, owing to a disagreement between the Alms interests and the Doepke interests, William L. Doepke failed of election to the Board of Directors of such company, and was discharged as an officer thereof.

February 16, 1920, the Gambrinus Stock Company surrendered its charter and appointed liquidating trustees to represent the stockholders and creditors of the company.

On May 11, 1920, the Alms & Doepke Company forwarded a letter to the Gambrinus Stock Company, which was signed by the Alms & Doepke Company, by E. H. L. Haefner, as Vice-President, stating that the Alms & Doepke Company refused

to recognize the contract and demanding the return of the $1,000 theretofore paid. The Gambrinus Stock Company replied refusing to rescind the contract, or to return the money, and stated that if the Alms & Doepke Company did not proceed to carry out the contract, they would sell the property at public auction, and hold the Alms & Doepke Company liable for any loss, and also the expenses of the sale.

On May 24, the Gambrinus Stock Company made tender of a deed to the property, which the Secretary of the Alms & Doepke Company refused to accept, and, on June 17, after notice given, the real estate was sold at public auction for $25,000, the expenses of the sale being $1,153.51.

Taking up now for consideration the validity of the contract, the question to be determined is as to the authority of William L. Doepke to sign the contract and bind the Alms & Doepke Company.

By Section 8660, General Code of Ohio, it is provided that:

"The corporate powers, business and property of corporations formed under this title shall be exercised, conducted, and controlled by the board of directors;   *   *   *."

The board of directors may, and often must, delegate authority to carry out the will of the majority. Such board may delegate authority to an agent to the same extent as an individual may so delegate. The power to acquire real estate rested in the board of directors, and, unless delegated to an agent or officer, could not be exercised by him. Such authority may be delegated, either formally, by action of the board, or by such course of conduct or dealing with the world as would

imply authority in the agent, and therefore bind the company.

No express delegation of authority was given by the board of directors to William L. Doepke to purchase real estate, but it is claimed that it was impliedly conferred on him as Vice-President, that the board of directors, by long acquiescence in allowing the president, or vice-president in his stead, to do almost any act on behalf of the company, created an established course of business with the world, and it included the purchase of real estate.

A leading case in Ohio on the subject of the delegation of authority by a board of directors is the case of *Bradford Belting Co.* v. *Gibson*, 68 Ohio St., 442:

Syl. 1. "The corporate powers, business and control of an Ohio corporation are required by Section 3248, Revised Statutes, to be exercised, conducted and controlled primarily by its board of directors; and *prima facie* the corporate power of making, or of refusing to perform, contracts on behalf of the corporation rests in the board of directors."

Syl. 2. "In the absence of express authority conferred upon its officers or agents, and of such a course of dealing with the world as clearly implies authority to do the controverted act, a corporation can be bound only by its board of directors."

At page 448, in the opinion, the court says:

"The law relating to principal and agent is the same whether the principal be a corporation or a natural person. In either case the principal is bound only by the authorized acts of his agent.

The extent of the agent's authority may be shown by the terms of the appointment, if they are explicit, or it may be shown by a course of dealing by which the agent is held out as having an authority which would include the act in question. 'But in whichever way this is done, it cannot be limited by secret instructions of the principal on the one hand, *nor can it be enlarged by the unauthorized representations of the agent on the other.*' "

Many cases are cited to show that even without express authority the agent may act for the corporation, and bind the board, if the board has allowed him to deal with the world in such a way as clearly implied that he had authority so to do. This principle is clear and it is not necessary to go into any further discussion of these authorities.

The Alms & Doepke Company was originally a partnership, the partners being Frederick H. Alms, William H. Alms and William F. Doepke, the father of William L. Doepke. Later a corporation was formed, known as The Alms & Doepke Company, which took over all the assets of the partnership, and in this corporation practically all of the stock, except that necessary for qualifying other directors, was owned by the three men who had formerly been partners. They conducted the company much as they conducted the partnership, each having authority, express or implied, to do many acts as agent of the company. William H. Alms was president until his death a short time ago, which was after the contract in question was signed. Frederick H. Alms was treasurer until his death in 1898. William F. Doepke was vice-president until his death in 1907, at which

time his son, William L. Doepke, succeeded the father as vice-president.

The evidence shows that William H. Alms did many acts for and on behalf of the company, aside from the regular mercantile business. Some of these acts were authorized by the board of directors; some later ratified by formal action of the board; some merely acquiesced in.

After the death of Frederick H. Alms, his brother William H. Alms acquired his stock, making him the owner of practically two-thirds of the capital stock of the company.

It is contended that with the gradual failure of health of the president that William L. Doepke, vice-president, began to take up the duties of the president, and that the board acquiesced in matters done by him in the same way as they had done with the president, William H. Alms; that the board adopted a passive attitude and allowed the president, or vice-president in his stead, to perform all acts which it was in the power of the board of directors to perform. An examination of the record does not in our opinion show such acquiescence or adoption of the acts performed by William L. Doepke. Various parcels of real estate had been purchased at different times, extending over a number of years from 1893 to 1920. It may be granted that the board of directors did give implied authority to William H. Alms, who was at the time of the alleged contract still president, and who, with his family, owned about two-thirds of the capital stock, but it is not shown that authority to do any acts outside of the usual matters connected with the mercantile business was conferred on his successor in office, or on one who was

acting in his absence. It seems clear from the record that William L. Doepke's actions in refer ence to the purchase of real estate were never acquiesced in by the board, actively or passively, nor did William H. Alms, or the board of directors, consent to the assumption of the authority by Doepke to make this purchase. In 1917, negotiations were conducted by Doepke for the purchase of a parcel of real estate, but this was done under the direction and instruction of William H. Alms. No course of dealing between the parties has been shown by the evidence to warrant anyone to rely on the fact that William L. Doepke had authority in the purchase of real estate to bind the Alms & Doepke Company.

It appears that William H. Alms, because of his having been an original partner, and, after incorporation, the president of the company, up to the time of this transaction, and because of being a large holder of the stock in the corporation, was allowed by the board of directors in many instances to deal for and bind the company. But this was a delegation to William H. Alms, the individual, and did not so attach to the office that one acting in his absence was possessed of the same authority.

"Land being much less frequently the subject of commercial transactions, and usually involving considerable amounts, authority for its purchase is more frequently specially conferred and less commonly results from implication." 1 Mechem on Agency (2 ed.), Section 841.

See also *Lawrence* v. *Montgomery Gas Co.*, 88 W. Va., 352, syllabus 3.

The contract in the instant case was for $75,000.

It was a transaction of considerable magnitude, not in the usual or ordinary course of a mercantile business. From the record we do not find that Doepke in this instance was impliedly authorized to act for the company.

In view of our holding in the matter of the agency, it is unnecessary to discuss the other questions presented by the petition in error.

Finding no error prejudicial to the plaintiff in error, the judgment of the court of common pleas will be affirmed.

*Judgment affirmed.*

HAMILTON, P. J., and CUSHING, J., concur.